The **AMERICAN SHIP BUILDING CO.**, Plaintiff,

v.

**LOCAL UNION 358, BROTHERHOOD OF BOILERMAKERS, etc., et al.,** Defendants.

Civ. A. No. C78–328.

United States District Court, N. D. Ohio, E. D.

July 21, 1978.

Parker M. Orr, Elliott S. Azoff, Don H. Pace, John J. Biancamano, Evan Jay Cutting, James P. Garner, Baker, Hostetler & Patterson, Cleveland, Ohio, for plaintiff.

Timothy R. Sweeney, Maxwell J. Gruber, James J. Schiller, Zellmer & Gruber, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is an action instituted by the plaintiff, The American Ship Building Company (AmShip), against the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers of America (AFL–CIO), Local Union No. 358, and individual officers and members thereof (hereinafter collectively the Union) pursuant to § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185. The plaintiff seeks injunctive and declaratory relief prohibiting the members of the defendant Union from engaging in a concerted refusal to work overtime at the plaintiff's Lorain, Ohio shipyard pend-

ing arbitration of a dispute between Am-Ship and the Union in accordance with the terms of a collective bargaining agreement entered into by and between the parties on November 20, 1975 (the Agreement).

The matter is now before the Court on the defendants' Motion to dismiss this action pursuant to Rule 12(b)(1), Fed.R.Civ.P., on the grounds that the Union is not engaged in a "strike or concerted stoppage of work" prohibited by the Agreement, that the dispute between AmShip and the Union is not subject to arbitration pursuant to the Agreement, and that the injunctive relief sought by the plaintiff is therefore prohibited by § 4 of the Norris-LaGuardia Act of 1932, 29 U.S.C. § 104, which provides in pertinent part as follows:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment . . . .

The relevant facts underlying this action may be summarized as follows. AmShip is a New Jersey corporation with its principal places of business located at Cleveland and Lorain, Ohio, engaged in the construction, conversion, repair and maintenance of ships. During the first three months of 1978, Richard H. Mayr (Mayr), President of the plaintiff's AmShip Division, observed members of the defendant Union loitering in areas of the company's Lorain facility to which they were not assigned to work, and neglecting their designated tasks. Accordingly, Mayr communicated his observations to the supervisors for these employees, and 14 members of the Union were subsequently disciplined by the company with written reprimands. Only 3 of these 14 reprimands were challenged through the grievance procedures established by Article 25 of the Agreement, despite AmShip's continued

willingness to submit the remaining reprimands to grievance and arbitration pursuant to the Agreement.

The plaintiff alleges that as a result of these disciplinary reprimands, the defendants commenced a concerted refusal to work overtime at AmShip's Lorain production facility on or about March 4, 1978, and that the number of employees refusing to perform overtime work at the request of the plaintiff escalated to a 100% refusal of overtime offered by AmShip on March 14 through 16, 1978, resulting in significant production delays and jeopardizing Am-Ship's construction and repair commitments to its customers.

The plaintiff alleges that this concerted refusal to work overtime constituted a "strike or concerted stoppage of work" prohibited by Article 22 of the Agreement, that the underlying dispute between the parties is subject to arbitration pursuant to Article 25 of the Agreement, and that Am-Ship is therefore entitled to injunctive and declaratory relief in accordance with the exception to § 4 of the Norris-LaGuardia Act announced by the Supreme Court in *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), wherein the court stated as follows:

Clearly employers will be wary of assuming obligations to arbitrate specifically enforceable against them when no similarly efficacious remedy is available to enforce the concomitant undertaking of the union to refrain from striking. On the other hand, the central purpose of the Norris-LaGuardia Act to foster the growth and viability of labor organizations is hardly retarded—if anything, this goal is advanced—by a remedial device that merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration. We conclude, therefore, that the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, that

the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy, and consequently that the Norris-LaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case.

\*    \*    \*    \*    \*    \*

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. . . ." 398 U.S. at 252–53, 254, 90 S.Ct. at 1593–1594 (footnotes omitted).

█ First, it is apparent that the concerted refusal of a union's membership to perform overtime assignments can constitute an economic strike or work stoppage, as both the federal courts and the National Labor Relations Board (the Board) have recognized prior and subsequent to the decision of the Supreme Court in *Boys Markets, supra.* In a leading decision, the Court of Appeals for the Third Circuit stated in *Avco Corp. v. Local No. 787*, 459 F.2d 968, 974 (3rd Cir. 1972), as follows:

. . . [T]he Union claims that the order of the district court was proper because there was no strike to enjoin. The Union points out that employees are obligated to work only five consecutive eight-hour days, that there was no allegation that they did not do so, and that since the prior arbitration held that employees could refuse overtime, there has been no strike or work stoppage as contemplated under the terms of the "no-strike" clause. We believe that the Union construes this provision of the agreement too restrictively. In the contract, the Union agreed

"that there shall be no strikes, walkouts, sit-downs, production retardings, or similar interruptions of, or interferences with, work during the term of this agreement for any reason \* \* \*." Whatever may be the effect of individual decisions not to work overtime, in light of Avco's past reliance on overtime to meet its production demands, the resolution discouraging such overtime work is clearly an attempt by the Union to retard production, or to interrupt or interfere with work. As such, the Union's conduct falls within the proscriptions of the collective bargaining agreement, and is therefore proper subject matter for injunctive relief.

*See also N.L.R.B. v. Leprino Cheese Co.*, 424 F.2d 184 (10th Cir.), *cert. denied*, 400 U.S. 915, 91 S.Ct. 173, 27 L.Ed.2d 154 (1970), applying the decision of the Eighth Circuit in *First Nat'l Bank of Omaha v. N.L.R.B.*, 413 F.2d 921 (8th Cir. 1969), and finding that a refusal by six employees to work overtime on Sunday constituted an economic strike. Similarly, as the Board reiterated in *Local No. P–575, etc. and Iowa Beef Packers, Inc.*, 188 N.L.R.B. No. 2, 1971 CCH N.L.R.B. Dec. ¶ 22, 675 (1975),

The Board has consistently held that a concerted refusal to work overtime is a strike and Section 8(b)(4)(B) of the Act prohibits strikes for a secondary object. That the overtime was designated as voluntary in the contract does not render the concerted refusal to perform it any less a strike or less coercive, particularly where, as here, it had been the employees' practice to work overtime for five months to five years.

*See also In re American Mfg. Concern and Local No. 6*, —— N.L.R.B. No. ——, 1938 N.L.R.B. Dec. 753 (1938).

█ In this instance, although the Union contends that "there was no past practice or custom or usage which required mandatory overtime" (affidavit of Harvey Krieg, President of defendant Local No. 358, submitted in support of the defendants' Motion to dismiss), an examination of the affidavits and exhibits thereto previously submitted

by the plaintiff in support of its Motion for a temporary restraining order and attached to the initial Complaint discloses that the Union's membership has traditionally complied with the company's requests to work overtime. The percentage of those employees refusing to work overtime when requested has drastically increased since January, 1978. For example, the overtime refusal rate for a group of 19 welders and leadmen at the company's Lorain facility increased from less than 8% for the period between October, 1977 and early March, 1978 to more than 92% for the period March 10 through March 16, 1978 (exhibit A to the affidavit of Robert Smith, Superintendent of Welding and Burning at AmShip's Lorain shipyard). The Amended Complaint alleges that as a result of the employees' refusals to accept overtime assignments, AmShip has experienced "significant delays in the production schedules regarding ships presently under construction or conversion" at Lorain.

Although the defendants assert that a concerted refusal to work overtime cannot constitute a "strike or concerted stoppage of work" within the meaning of the collective bargaining agreement because the acceptance of overtime assignments under the contract is allegedly voluntary rather than compulsory, both the Court of Appeals in *Avco Corp., supra,* and the Board in *Iowa Beef Packers, Inc., supra,* recognized that a *concerted* refusal to work overtime, even if such overtime is nominally voluntary, constitutes a strike where the object of the concerted action is "to retard production or to interrupt or interfere with work," 459 F.2d at 974. The plaintiff alleges that the Union's conduct has had precisely that effect upon AmShip's production at its Lorain shipyard. As the court stated in *Elevator Mfr's Assn. of N.Y. v. Int'l U. of El. Con.,* 342 F.Supp. 372, 374 (S.D.N.Y.1974):

In today's complicated interplay between management and labor, to say that merely because men are working they are not striking is too easy. It does not take into account that performing less work than they have under a contract in existence for years and upon which management

has relied is a refined form of torture every bit as destructive as a strike. It is a strike.

Article 22 of the parties' collective bargaining agreement provides in pertinent part that "[t]he Unions signatory to this agreement will not call or sanction *any* strike or concerted stoppage of work during the term of this agreement," unless AmShip fails to comply with the arbitration provisions of the contract (emphasis added). In this instance, the company has represented its willingness to proceed to arbitration of its dispute with the Union in accordance with the provisions of the Agreement. The Court therefore concludes, upon application of the foregoing precedent, that the concerted refusal to work overtime in which the defendants are alleged to be engaged constitutes a "strike or concerted stoppage of work" prohibited by Article 22 of the Agreement.

The defendants also contend that the underlying dispute between the Union and the company is not subject to arbitration pursuant to the Agreement. The plaintiff alleges that the defendants' concerted refusal to work overtime was precipitated by a series of disciplinary reprimands given individual employees for violations of company work rules. Several of these reprimands were challenged through the grievance procedures established by Article 25 of the Agreement, which provides for mandatory binding arbitration of such disputes as follows:

(4) If the grievance has not been settled to the satisfaction of all concerned in step (3) above, the matter shall be submitted to a board of arbitration, composed of one representative for the union or unions involved, one representative for the Company, and the third representative shall be selected by the Union and the Company. In the event the two (2) arbiters designated by the parties disagree on the third arbiter, then the third arbiter shall be selected within a period of thirty (30) calendar days from a list submitted by the Federal Mediation and Conciliation Service, which shall consist of five (5) names of impartial arbitrators.

Each party to the dispute shall have the privilege of deleting two (2) names from the list and the remaining name shall be selected as the third arbiter, who shall be chairman.

In either event the decision of the arbitrator shall not change, add to or detract from any of the terms of this agreement and shall be final and binding upon both parties in the dispute.

Clearly, such disciplinary reprimands are subject to the grievance and arbitration provisions of Article 25 of the Agreement, and the plaintiff has expressed its willingness to proceed to arbitration in each instance in accordance with the provisions of the Agreement.

■ The defendants, however, deny that the underlying dispute between the parties derives from these disciplinary reprimands, and assert that it is predicated upon Am-Ship's position that employees are required to accept overtime assignments under the terms and conditions of the collective bargaining agreement when overtime is offered by the company. An examination of the collective bargaining agreement discloses that disputes concerning the distribution of overtime are also subject to the arbitration provisions of the contract, Article 16 of which provides in pertinent part that "[i]f mutual agreement [concerning overtime assignments] cannot be reached, the work shall proceed and the situation shall be handled as per Article 25," that is, by means of grievance and arbitration. In confronting this issue in *Avco Corp., supra,* the Third Circuit Court of Appeals held that the broad grievance and arbitration provisions of the parties' collective bargaining agreement bound them to arbitrate the question of compulsory overtime, stating as follows:

[W]e note that:

"To ensure maximum utilization of the arbitral process, the Supreme Court in *United Steelworkers v. Warrior & Gulf Navigation Co.* [, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960),] held that, when a party sought to compel arbitration in a suit under section 301 of the

Labor-Management Relations Act, courts should resolve questions of interpretation of the arbitration clause by applying a strong presumption in favor of arbitrability. By making the presumption difficult to rebut the Court ensured that in virtually every case in which one party sought arbitration the dispute would be settled by the arbitrator. The presumption in favor of arbitrability applies even to the interpretation of contract provisions going to the scope of arbitral authority * * *." Note, Labor Injunctions, Boys Markets and the Presumption of Arbitrability, 85 Harv.L.Rev. 636, 637 (1972). *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–585, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), *accord, e. g., Procter & Gamble Indep. Union of Port Ivory, New York v. Procter & Gamble Mfg. Co.,* 298 F.2d 644, 645–646 (2d Cir. 1962).

In *Warrior & Gulf,* the Supreme Court stated:

"In the absence of any express provision excluding the particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where * * * the arbitration clause [is] quite broad." 363 U.S. at 584–585, 80 S.Ct. at 1354.

There are strong reasons supporting the federal policy in favor of arbitration. First, arbitrators are more competent than courts to interpret labor contracts and to resolve the problems of labor-management relations. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Second, the process of arbitration contributes to the maintenance of labor peace. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Third, ordering arbitration is essential in effectuating the parties' contractual intent to settle disputes through arbitration. Fourth, a suit for damages rather than an injunction ordering arbitration "might not repair the

harm done by the strike, and might exacerbate labor-management strife." Note, Labor Injunctions, Boys Markets, and the Presumption of Arbitrability, 85 Harv.L. Rev. at 638, *citing, Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 248, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). 459 F.2d at 973.

Accordingly, in the instant action, inasmuch as disputes concerning the assignment of overtime are subject to the binding arbitration provisions of the Agreement, it cannot "be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers" the plaintiff's asserted right to require its employees to accept overtime assignments, *United Steelworkers of America v. Warrior & Gulf Nav. Co., supra*, 363 U.S. at 582–83, 80 S.Ct. 1347. *See Avco Corp., supra.*

Since the underlying disputes between the parties, whether with respect to individual disciplinary reprimands or with regard to the company's right to require overtime, are subject to arbitration pursuant to the collective bargaining agreement, the defendants are contractually bound to resolve these disputes by means of arbitration, without resort to a "strike or concerted stoppage of work during the term of this agreement" (Article 25, paragraph 1), including a concerted refusal to work overtime. *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976); *Boys Markets, supra.* As the court stated in *Avco Corp., supra* at 972,

> The "no-strike" clause is the quid pro quo which Avco obtained for agreeing to submit to compulsory arbitration, and the Union agreed to forbear from striking in order to require such arbitration. To allow the Union to abandon its remedy of arbitration in order to disregard the "no-strike" clause would render the collective bargaining agreement illusory and would subvert the policy favoring the peaceful settlement of labor disputes by arbitration.

Accordingly, the defendants' motion to dismiss this action is hereby denied.

IT IS SO ORDERED.