**TEXAS INTERNATIONAL AIRLINES, INC., Plaintiff,**

**v.**

**ASSOCIATION OF FLIGHT ATTENDANTS, Defendant.**

**Civ. A. No. 76–H–1625.**

United States District Court, S. D. Texas, Houston Division.

Aug. 29, 1980.

---

**438**

Herbert Prashker, New York City, Douglas L. Lashley, Houston, Tex., for plaintiff.

Hal K. Gillespie, Hicks, Gillespie & James, P. C., Dallas, Tex., for defendant.

## MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

Plaintiff Texas International Airlines, Inc. (hereinafter "TIA") brings this action against the Airline Pilots' Association (hereinafter "ALPA") and the Association of Flight Attendants [1] (hereinafter "AFA") to vacate an award of the Texas International Airlines Flight Attendants' System Board of Adjustment (hereinafter "the System Board") pursuant to Section 204 of the Railway Labor Act, 45 U.S.C. § 184 (1972) (hereinafter "the Act"). Defendant AFA has counterclaimed against plaintiff seeking enforcement of the System Board's award. Presently pending in this cause are the cross–motions for summary judgment of plaintiff TIA and defendant and counter-plaintiff AFA. For the reasons set forth herein, the motions of each party will be granted in part and denied in part.

*Requirements of the Railway Labor Act*

Plaintiff TIA is a carrier as defined by Section 201 of the Railway Labor Act (45 U.S.C. § 181) and is therefore subject to the provisions of the Act. Defendant, Association of Flight Attendants, is a labor organi-

---

1. At the time this controversy arose and during some of the pre–arbitration proceedings, the union representing the flight attendants was the Airline Pilots Association, International. On April 28, 1976, the Association of Flight Attendants became the flight attendants' certified representative and assumed administration of the collective bargaining agreement between the flight attendants and TIA.

ALPA was dismissed as a party defendant by this Court's order of January 17, 1977, based on the stipulations of the parties that AFA possesses all rights, duties and obligations to and under the System Board's award and that ALPA is no longer a necessary party to this lawsuit.

zation, which on April 28, 1976, was certified pursuant to Section 2, Ninth of the Act as the authorized representative of TIA's flight attendants. Prior to April 28, 1976, and at all times otherwise pertinent hereto, ALPA was the certified representative for flight attendants in the service of TIA.[2]

The Railway Labor Act provides as follows:

"It shall be the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of the dispute, between the carrier and the employees thereof."

RLA Section 2, First (45 U.S.C. § 152, First). Accordingly, plaintiff TIA has entered into collective bargaining agreements with the authorized representative of its flight attendants. From December 1, 1973, to June 1, 1975, the rates of pay, rules and working conditions of TIA's flight attendants, including the procedures for resolution of disputes, were governed by the collective bargaining agreement, effective December 1, 1974, entered into by TIA and ALPA on February 14, 1974. This agreement is attached to plaintiff's original petition as Exhibit A. From June 1, 1975, and effective until September 1, 1977, the rates of pay, rules and working conditions of TIA's flight attendants, including procedures for resolution of disputes, have been governed by a subsequent collective bargaining agreement, entered into by TIA and ALPA on September 19, 1975. This agreement is attached to plaintiff's original petition as Exhibit B.

Section 3 of the Act, which applies to rail carriers, authorizes boards of adjustment established by that section to adjust.

"disputes between an employee or group of employees and a carrier or carriers growing out . . . of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Section 204 of the Act, 45 U.S.C. § 184, which applies to carriers by air, provides that:

It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181 to 188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title.

Therefore, TIA and the authorized representative of its flight attendants have by means of Section 21 of the collective bargaining agreement referred to hereinabove established a System Board of Adjustment with jurisdiction to adjust disputes which are duly processed but not resolved by the methods prescribed in the collective bargaining agreement.

### Applicable Provisions of the Collective Bargaining Agreement

Section 20 of the collective bargaining agreements establishes procedures for the resolution of disputes over the discipline and dismissal of flight attendants as follows:

(A) Hearing

1. A flight attendant who is disciplined or dismissed from the service of the Company shall have such action confirmed in writing within seven (7) days by the Company and such confirmation shall set forth the precise charge or charges against her. A flight attendant shall be entitled to an investigation and hearing provided she makes written request within ten (10) days after receiving such written confirmation.

2. Such written request for an investigation and hearing shall be addressed to the flight attendants' immediate supervisor, furnishing a copy to the Vice

---

**2.** *See also* note 1, *infra.*

President–Personnel and to the Vice President–Customer Services.

\*    \*    \*    \*    \*    \*

5. Within ten (10) days after the close of such investigation and hearing the Company shall announce its decision in writing and shall furnish the flight attendant or her duly accredited representative a copy thereof.

(B) Appeal

1. When a copy of such decision has been received by the flight attendant or her duly accredited representative or representatives, and if such employee is dissatisfied with the Company's decision, such employee shall have the right to appeal to the Vice President–Customer Services or his duly appointed representative.

\*    \*    \*    \*    \*    \*

7. If, after the appeal provisions hereinbefore provided have been complied with or mutually waived, further appeal by the flight attendant is made, it shall be to the Texas International Airlines System Board of Adjustment as provided for in Section 21 hereof covering the establishment and maintenance of a System Board of Adjustment.

However, Section 20(C)2 excludes probationary employees [3] from the rights provided under Section 20 as follows:

"Nothing herein shall extend the right of investigation and hearing to a flight attendant during her probationary period."

The jurisdiction of the System Board of Adjustment established by Section 21 of the collective bargaining agreements is defined therein as follows:

(D) The Board shall have jurisdiction over disputes between any employee covered by the flight attendants' Agreement and the Company growing out of grievances or out of the interpretation or application of any of the terms of the flight attendants' Agreement. The jurisdiction

of the Board shall not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreements between the parties hereto.

(E) The Board shall consider any dispute properly submitted to it by the President of the Association or by the Vice President–Personnel of the Company when such dispute has not been previously settled in accordance with the terms provided for in the flight attendants' Agreement.

Section 21(G) of the collective bargaining agreement further provides that:

All disputes properly referred to the Board for consideration shall be addressed to the Chairperson . . . No matter shall be considered by the Board which has not first been handled in accordance with the appeals provisions of the flight attendant's Agreement, including the rendering of a decision thereon.

Section 22 of each of the collective bargaining agreements, entitled Grievances, provides for the processing of grievances other than disputes over discipline and dismissal, which are handled in accordance with the procedures established in Section 20, as set forth hereinabove. Section 22(C) provides that, "It shall be specifically understood that the MEC [Master Executive Council] Chairman or her designated representative shall have the authority to file any grievance on behalf of any individual or group of attendants covered by this Agreement."

### Facts of the Case

#### The December, 1974, Strike–Termination of Probationers

On December 1, 1974, the union representing TIA's ground employees, the Air Line Employees Association, went on strike. Thereafter TIA ran a full, and later a partial, operation because of this strike. How-

---

**3.** Section 9(A) of each of the agreements defines probationary employees as follows:

"Flight attendants shall be considered as probationary employees for six (6) months from

the date of employment as a flight attendant."

ever, because of other TIA employees' refusal to cross the ALEA picket lines, TIA ceased operations on December 4, 1974. TIA therefore notified its regular, non–probationary flight attendants that they had been placed on furlough pursuant to Section 13 of the agreement and terminated all of its probationary flight attendants. On April 4, 1975, TIA resumed operations, recalled its furloughed flight attendants and, pursuant to a back–to–work agreement between TIA and ALPA, offered re–employment to the former probationary flight attendants who had been terminated.

### Termination of Probationary Employees Cedillo and Perry[4]

By letter of April 21, 1975, TIA informed Alice Cedillo, one of its probationary flight attendants, that improvement was required in the performance of her duties and in her appearance and furnished her with an evaluation report dated April 15, 1975, stating that her performance on a "check/ride" was less than satisfactory. Believing that TIA's warnings of Ms. Cedillo were taken in retaliation for her activities in support of the union during the strike, ALPA requested by letter of April 29, 1975, an "investigation and hearing based upon harassment, i. e., Alice Cedillo in letters dated 4–21–75 and 4–15–75." TIA declined to schedule such a hearing, contending that under Section 20(C)2 of the agreement, probationary employees had no right to investigation or hearing. On May 9, 1975, during her probationary period, Ms. Cedillo was informed by TIA that her probationary period had been unsatisfactory and, therefore, that her employment was terminated as of that date. ALPA thereupon amended its April 19, 1975, request for a hearing with respect to Ms. Cedillo, by requesting an investigation and hearing on her termination and "discrimination for union activities . . . ." On or about June 10, 1975, TIA, in reliance on Section 20(C)2 of the agreement, denied ALPA's amended request for an investigation and hearing respecting Ms. Cedillo.

On May 15, 1975, during her probationary period, Melissa Perry was informed by TIA that her probationary period had been unsatisfactory, and that her employment was therefore terminated as of that date. On May 20, 1975, ALPA requested "an investigation and hearing based upon termination of 5–15–75 and the denial of union representation at termination hearing of Melissa Perry." ALPA took the position that the termination of Ms. Perry, like the case of Ms. Cedillo, was the result of anti–union animus. By letter of June 13, 1975, TIA refused to schedule an investigation and hearing concerning the termination of Ms. Perry on the ground that she had been a probationary employee and therefore had no right to an investigation and hearing pursuant to Section 20(C)2. In response to each of the aforementioned denials of its requests that investigations and hearings be scheduled as to Cedillo and Perry, ALPA requested appeals hearings pursuant to Section 20(B) of the agreements. Each of ALPA's requests for an appeals hearing on the denial of its request for investigation and hearing on behalf of probationary employees was denied by TIA in reliance on Section 20(C)2 of the collective bargaining agreement.

On July 3, 1975, ALPA submitted a petition to the System Board of Adjustment for a review of TIA's denials of its request for an appeal hearing in each of the aforementioned instances. ALPA maintained that each of these grievances "was filed as an M.E.C. grievance and the M.E.C. has the right to process grievances of this type . . . ." ALPA further contended that "All positions taken by the grievant and the Association are without prejudice to the rights provided under federal labor law and to the securing of relief in the federal courts." In response to each of the union's petitions to the System Board, TIA asserted that the System Board had no jurisdiction

---

4. Alice Cedillo and Melissa Perry were among the probationary flight attendants terminated in December, 1974, and rehired in April, 1975.

to consider the petition because the matter was not properly submitted to the Board.

The four–member System Board deadlocked on the issue of whether these matters were properly submitted to it, and by letter dated January 24, 1976, ALPA requested the National Mediation Board (hereinafter "NMB"), pursuant to the agreements, to appoint a neutral referee to serve as the impartial member of a five–member System Board. Dr. Gladys Gruenberg was selected by the parties from a panel of five neutrals provided by the NMB. A hearing before the five–member System Board was held on June 14, 1976, with AFA participating as the newly certified representative for TIA's flight attendants; TIA participated and challenged the Board's authority to consider or determine the matters submitted. *See* System Board Opinion and Award, p. 1.

In an Opinion and Award dated August 13, 1976, the Board determined that it "had jurisdiction to hear the cases presented at the hearing since they involved interpretation of the agreement between the parties." (Award, p. 9)

While the System Board determined that Section 20(C) foreclosed a probationary employee from filing a grievance with respect to "a discharge relating to the probationary employee's conduct and acceptability as an employee" (Award, p. 9), it further held that "when there is an allegation that the discharge was motivated by anti–Union animus, the Railway Labor Act specifically supersedes Section 20(C)2 of the agreement," by virtue of Section 2, Eighth, of the Act.[5] Accordingly, the System Board held

---

5. Section 2, Eighth, of the Act provides as follows:

> Every carrier shall notify its employees by printed notices in such form and posted at such times and places as shall be specified by the Mediation Board that all disputes between the carrier and its employees will be handled in accordance with the requirements of this chapter, and in such notices there shall be printed verbatim, in large type, the third, fourth, and fifth paragraphs of this section. The provisions of said paragraphs are made a part of the contract of employment between the carrier and each employee, and shall be held binding upon the parties, regardless of any other express or implied agreements between them.

45 U.S.C. § 152, Eighth. The paragraphs which, by virtue of this provision, are required to be posted and are expressly made a part of the contract of employment between the carrier and each employee provide as follows:

> Third. Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

> Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: *Provided*, That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization.

> Fifth. No carrier, its officers, or agents shall require any person seeking employment to sign any contract or agreement promising to join or not to join a labor organization; and if any such contract has been enforced prior to the effective date of this chapter, then such carrier shall notify the employees by an

that TIA had violated Section 20 of the agreement by denying to Alice Cedillo and Melissa Perry an investigation and hearing and an appeal hearing and ordered that TIA provide them with an appeal hearing pursuant to Section 20(B).

*The May, 1975, Reduction in Force–Second Termination of Probationary Employees*

On May 15, 1975, all probationary employees except Melissa Perry were notified that their employment would be terminated effective June 4, 1975, in order to effectuate a reduction in force. On June 5, 1975, ALPA filed a request for an investigation and hearing on these terminations of probationary employees, but on June 13, 1975, the Company denied ALPA's request, again relying on Section 20(C)2 of the agreement. By letter dated June 27, 1975, TIA also denied ALPA's request for an appeal hearing in this matter; accordingly, on July 9, 1975, ALPA requested that the System Board review TIA's denials of its request for an appeal hearing. In response to ALPA's petition to the System Board, TIA asserted that the Board was without jurisdiction to consider the petition because the matter was not properly submitted to it.

Subsequently, these probationary employees were notified by TIA that they were rehired; however, they did not receive the ten–day notice of recall, pursuant to Section 13(E)[6] of the agreement, that was given to non–probationary employees. On July 8, 1975, ALPA filed a request for an investigation and hearing based on TIA's "failure to give the minimum ten (10) days notice of reemployment to terminated probationary employees pursuant to recall", alleging that the "Company has thus violated § 13(E) of the above named agreement." By letter dated July 21, 1975, TIA refused to schedule an investigation and hearing concerning its failure to give ten days' notice of recall to terminated probationary employees, again relying on Section 20(C)2 of the agreement. In response to TIA's denial of investigation and hearing, ALPA requested an appeal hearing by letter dated August 4, 1975. TIA failed to respond to ALPA's request for an appeal hearing on the aforementioned request for investigation and hearing, and on September 25, 1975 ALPA submitted a petition for review to the System Board.

appropriate order that such contract has been discarded and is no longer binding on them in any way.

45 U.S.C. § 152, Third, Fourth and Fifth.

6. Section 13 of the collective bargaining agreements provides in pertinent part as follows:

REDUCTION IN PERSONNEL:

SECTION 13

(A) When flight attendants are furloughed due to a reduction in personnel, the most junior flight attendant on the seniority list when the reduction occurs shall, subject to Section 7 be furloughed.

\* \* \* \* \* \*

(C) Flight attendants who have passed their probationary period shall have two (2) weeks notice of furlough, or two (2) weeks financial compensation at applicable base pay rates in lieu thereof, except when such furlough is caused by an act of God, strikes, work stoppages or circumstances reasonably beyond the control of the Company.

(D) All flight attendants who have been furloughed due to a reduction in force shall file their addresses with the Personnel Department and shall thereafter promptly advise the Personnel Department of any change in address.

(E) A flight attendant on furlough shall not be entitled to preference in reemployment if she does not comply with the requirements of paragraph (D) of this Section, or if she does not notify the Company in writing or by telegraph of her intention to return to service within five (5) days of receipt of the Company's notice offering to reemploy her, or she does not return to the service of the Company on or before the date specified in the notice offering such reemployment, which date shall not be less than ten (10) days after such notice is sent by registered mail or telegram to the flight attendant at the last address filed by her with the Personnel Department.

(F) Flight attendants furloughed due to a reduction in force, on return to duty shall be allowed, for seniority purposes, all time accrued prior to such furlough but shall not continue to accrue seniority during the period of furlough. All such furloughs shall expire at the end of two (2) years from effective date of the furloughs and the flight attendant shall thereupon be deemed permanently severed from the Company and shall lose her seniority rights.

\* \* \* \* \* \*

The four–member System Board deadlocked on the issue of whether these matters concerning probationary employees were properly submitted to it. As set forth hereinabove, by letter dated January 24, 1976, ALPA requested the NMB, pursuant to the agreement, to appoint a neutral referee to serve as the impartial member of a five–member System Board to hear these matters relating to the treatment of probationary employees, as well as the claims regarding the individual discharges of probationers Perry and Cedillo.

At the June 14, 1976, hearing, TIA also challenged the Board's authority to consider or determine the matters relating to the dismissal of probationary employees who, according to TIA's interpretation of Section 20(C)2 of the collective bargaining agreement, have no right to investigation and hearing regarding their termination.

By its opinion and award of August 13, 1976, the System Board found that it had jurisdiction to consider matters relating to the termination of probationary employees since these grievances also involved interpretation of the agreement between the parties. The Board further determined that since probationary employees are flight attendants within the meaning of Section 2(B) and therefore employees within the meaning of Section 2(A),[7] Award at p. 11, they "are covered by all sections of the agreement except those which specifically exclude them by reference." Award at p. 9. The Board therefore concluded that since the provisions of Section 13 (Reduction in Force) did not specifically exempt probationary employees (except insofar as their entitlement to two weeks' notice prior to furlough), probationary employees could not be discharged to effect a reduction in force and, therefore, that their

discharge effective June 4, 1975, was impermissible. The Board therefore found that all employees affected by a reduction in force, including probationers, must be furloughed and if they are recalled, should be credited with seniority accrued from the original date of hire. Finally, the Board determined that probationary employees recalled from furlough status are entitled to the same ten–day notice of recall as regular employees, pursuant to Section 13(E) of the agreement. Award at p. 12. Therefore, the Board concluded that TIA had violated Section 13(E) of the agreement by failing to give probationary employees ten days' notice of reemployment after furlough and, therefore, ordered that each probationary employee so affected "be paid in accordance with the same system which the parties have used in the past for failure to give the required notice." Award at p. 13. The Board further ordered that the employees involved have their seniority adjusted so as to date from their original date of first employment before the strike occurred. *Id.*

### History of this Litigation

On October 1, 1976, plaintiff TIA filed this action seeking to set aside the award of the System Board of Adjustment on the basis that the System Board exceeded its jurisdiction in making the awards since Section 20 clearly affords probationary employees no right to investigation and hearing in any matter relating to their discharges. Defendant AFA counter–claimed against TIA, seeking enforcement of the Board's award. AFA takes the position that since these disputes involve interpretation of the collective bargaining agreement, the System Board had jurisdiction pursuant to Section 21(D) of the agreement. Cross–mo

---

**7.** Section 2 of the collective bargaining agreements provides in pertinent part as follows:

(A) "Employee" as used in this Agreement means a flight attendant whose name appears on the Flight Attendant System Seniority List.

    \*     \*     \*     \*     \*     \*

(B) "Flight Attendant" means an employee of Texas International Airlines, Inc., whose duties consist of performing or assisting in

the performance of enroute cabin service or ground service to delayed or canceled passengers as prescribed by the Company regulations in a resourceful and gracious manner and shall include responsibility for applying these services for the welfare, comfort, enjoyment, and safety of passengers, and who may be requested to participate in publicity or promotional activities.

tions for summary judgment were filed and argued informally to the Magistrate and subsequently to this Court at a conference in chambers. On August 17, 1978, the Court stayed this action, remanding it to the System Board in order that the Board might "consider legal positions relating to the scope of its jurisdiction not presented at the time of its original Opinion and Award."

On August 1, 1979, the five–member System Board rendered its Supplemental Opinion and Award. In response to TIA's contention that the Board exceeded its jurisdiction in the matter of individual probationers Perry and Cedillo by basing its jurisdiction on the Railway Labor Act rather than the agreement, the Board reiterated that it did not substitute the Railway Labor Act for its contractual jurisdiction in this matter. The Board stated that the collective bargaining agreement, upon which its jurisdiction is based, must be viewed within the context of the Railway Labor Act, which prohibits interference with employees' collective bargaining rights. 42 U.S.C. § 152, Fourth, quoted in note 5, *supra.* Therefore, since probationers Cedillo and Perry took the position that their discharges were in retaliation for their activities in support of the union, the contract provision barring the use of the grievance procedure by probationers was inoperative in this instance.

The Board further found that although Section 20 "precludes probationary employees from filing grievances over discharges stemming from their own conduct, it must be read in the context of the entire agreement and particularly in conjunction with Section 22, which gives the Association the option of filing grievances which involve organizational interests. . . ." Thus, the Board found that its jurisdiction was clearly founded on the collective bargaining agreement.

With regard to the complaints involving the discharge and recall of probationers during the reduction in force, the Board affirmed its original position that it had jurisdiction, pursuant to Section 21(D), to determine a question growing out of the interpretation of the agreement, i. e., whether the provisions of Section 13 relating to reduction in force apply to all flight attendants or only to non–probationary flight attendants. The Board stated that this grievance is unrelated to discipline or dismissal within the scope of Section 20(C) and, therefore, this issue is not foreclosed from the Board's consideration. Further, in its supplemental opinion, the Board found that the probationary employees affected by the reduction in force were furloughed rather than discharged.

Subsequently, both parties renewed their motions for summary judgment and presented informal argument in support thereof before this Court in chambers, and the Court took the motions under advisement.

*Positions of the Parties*

Plaintiff TIA contends that with regard to both issues in both its original and supplemental opinions, the System Board of Adjustment exceeded its jurisdiction. First, TIA contends that since Section 20(C) precludes a probationary employee from filing a grievance relating to her discharge or dismissal, the claims of Cedillo and Perry and of the other probationers as a group were without the Board's jurisdiction. Secondly, TIA maintains that in altering or expanding the bases for its jurisdiction in the Supplemental Opinion and Award rather than considering TIA's challenges to its jurisdiction, the System Board exceeded the scope of this Court's remand. Finally, TIA contends that in determining that probationary employees were furloughed rather than discharged, the Board exceeded the scope of the issue presented to it, i. e., whether the recalled probationers were entitled to ten days' notice.

Defendant and counter–plaintiff AFA contends that Section 21 of the agreement empowers the System Board to decide disputes arising under the agreement which are properly submitted to it. Accordingly, the Board has jurisdiction over disputes arising out of grievances or application of the terms of the agreement, which AFA

maintains that the matters in question clearly are. Therefore, AFA contends that under the applicable standard of review, this Court must enforce the Board's award since the Board did not fail to confine itself to matters within its jurisdiction.

### Standard of Review

■ Section 153, First, of the Railway Labor Act specifically provides that district courts have jurisdiction to review the award of a railroad adjustment board when it is alleged that the Board has failed to confine itself to matters within the scope of its jurisdiction. That section, by its terms, is not applicable to airline system boards of adjustment, but the provisions of Section 153, First, have been

> utilized by analogy in airline disputes in the same fashion as in railway controversies. Furthermore, the cases have found little distinction, if any, between the applicable principles affecting awards made under the National Railway Labor Act and awards of other arbitration panels.

*Hart v. Overseas National Airways, Inc.,* 541 F.2d 386, n. 16 (3rd Cir. 1976) (citations omitted). Thus, while the Court may not review the merits of the Board's award in a matter that is properly before it, *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir. 1970), the Court may examine the arbitration agreement to determine whether the parties have agreed to arbitration of a particular issue and, therefore, whether the Board had jurisdiction to render the award in question. *International Association of Heat and Frost Insulators and Asbestos Workers, Local 66, AFL–CIO v. Leona Lee Corp.,* 489 F.2d 1032 (5th Cir. 1974). But in making such a determination, the Court may not pass on the merits of the award, substitute its judgment for that of the Board or inquire as to whether substantial evidence supports the Board's award. *International Association v. Leona Lee, supra ; Diamond, supra.*

The Fifth Circuit has set forth the full standard which this Court should apply in evaluating whether the parties intended to arbitrate a particular issue:

> Interpretation of contract language restricting the scope of arbitration is governed by the rigid standards established by the Steelworkers' cases. These require "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *" *United Steelworkers of America v. Warrior and Gulf Nav. Company, supra,* 363 U.S. 574 at 585, 80 S.Ct. 1347 at 1354, 4 L.Ed.2d 1409, and that an order prohibiting arbitration cannot be issued "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior and Gulf Nav. Company, supra,* 363 U.S. at 582–583, 80 S.Ct. at 1353. As summarized by the Second Court of Appeals in *Procter and Gamble Independent Union of Port Ivory, New York v. Procter and Gamble Company,* 2 Cir., 298 F.2d 644, 645–646 (1962); "the nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedures set forth in the agreement. * * *"

*Communication Workers of America v. Southwestern Bell Tel. Company,* 415 F.2d 35, 39 (5th Cir. 1969).

### The Award in Favor of Perry and Cedillo

The Court concludes that, pursuant to the standard set forth hereinabove, the Board exceeded its jurisdiction in ordering that TIA afford Section 20(B) appeal hearings to Melissa Perry and Alice Cedillo. Section 20(C)(2) is clear and unambiguous in its pronouncement that probationary employees are not entitled to an investigation and

hearing concerning their discipline and discharge. Therefore, the Court concludes that the face of the agreement itself establishes "beyond peradventure of doubt" that probationary employees are excluded from coverage of Section 20 hearing procedures.

Since it is therefore clearly unnecessary for the Board to interpret the contract in order to decide whether these probationers were entitled to an appeal hearing, the Board does not have jurisdiction under Section 21(D). Neither does the Board have jurisdiction under Section 22, relating to MEC grievances concerning associational interests, since the intent of the agreement cannot be subverted by allowing the association to file grievances which an individual employee would be precluded from filing.[8]

Neither can the Court find any valid basis for the Board's assumption of jurisdiction based on the provisions of the Railway Labor Act. In its original opinion and award, the Board stated that it based its jurisdiction on Section 2, Eighth, of the Act, which incorporates several substantive provisions of the Act within "the contract of employment between the carrier and each employee, . . . ." However, this language makes it clear that these provisions are incorporated within the individual contract of employment between the employer and employee rather than the collective bargaining agreement, which is referred to in the Act as the "agreement concerning rates of pay, rules and working conditions."

In any event, however, the substantive provisions thus incorporated[9] are not inconsistent with the contractual remedial grievance procedure set forth in the collective bargaining agreement, which specifies to whom and under what circumstances the grievance procedures established by the agreement are available to those complaining of substantive violations of the agreement. The incorporation of substantive provisions of the Railway Labor Act,

whether in the individual contract of employment or the collective bargaining agreement, did not alter these procedural provisions of the agreement by expanding the jurisdiction of the System Board or investing it with particular expertise to hear the complaints of probationers who complain that they have been discharged in violation of these sections of the Railway Labor Act. See, e. g., *Brady v. Trans World Airlines, Inc.*, 223 F.Supp. 361, 367 (D.Del.1963), aff'd, 401 F.2d 87 (3rd Cir. 1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).

In fact, any employee who claims that he has been discharged in violation of the Act has his remedy in an action in federal district court. *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974), citing *Brotherhood of Railway Trainmen v. Howard*, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); *Brotherhood of Railway Trainmen v. Smith*, 251 F.2d 282 (6th Cir. 1958). On the other hand, if an employee's claims relative to discharge arise from differing interpretations of the collective bargaining agreement, his complaint would fall within the jurisdiction of the System Board. *Conrad, supra*, at 918, citing *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972).

The *Conrad* case arose out of an action filed by a former airline pilot in federal district court, pursuant to the Railway Labor Act. Plaintiff, who had not passed his probationary period, made a two-fold challenge to the validity of his discharge by Delta: first, he complained that he had been denied the right to investigation and hearing; second, he maintained that because his discharge was tantamount to a denial of his right to join a union, it was in violation of his rights protected by the Railway Labor Act. Like the collective bargaining agreement in the instant case, the agreement between Delta and the union to

---

8. In this respect, the Court concurs with the Board's original opinion, wherein it stated that:

"To permit grievances involving discharge of probationary employees to be considered under Section 22(C) as the Union contends,

would completely negate the intent of Section 20(C)2 and render it meaningless." Opinion and Award at pp. 8–9, n. 2.

9. The full text of these provisions is set forth in note 5, *supra*.

which plaintiff belonged contained a clause denying to probationary employees the right to investigation and hearing concerning discharge. The Court held that plaintiff's claim that he was wrongfully denied investigation and hearing in the matter of his discharge was without merit. In connection with this holding, the Court discussed thoroughly this type of provision:

In the absence of a statute or an agreement, an employer may discharge his employee for cause or without cause, and the Act does not limit the employer's right to discharge to instances involving cause. *Russ v. Southern Ry. Co.*, 334 F.2d 224, 228 (6th Cir., 1964), cert. denied, 379 U.S. 991, 85 S.Ct. 699, 13 L.Ed.2d 611. In our case the employer has agreed to limit its freedom to discharge a pilot who has served one year or more, but plaintiff is not in that class.

The conditioning of an employee's right not to be discharged without a hearing on his having a certain period of service is not arbitrary nor irrational. The rationality of an employer's having greater freedom to discharge during a probationary or testing period seems obvious. It is not the type of hostile discrimination against a group of employees which would lie beyond the proper scope of a collective bargaining agreement. *Steele v. Louisville & Nashville R. R. Co.*, 323 U.S. 192, 200, 65 S.Ct. 226, 231, 89 L.Ed. 173 (1944); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

Plaintiff's original complaint, and the grievance on which he asked ALPA to represent him, embraced only the claim that Delta could not discharge him without the investigation and hearing described in the collective bargaining agreement. Now that, after discovery of Delta's files, he is asserting that he was discharged for activity as a union member, he attempts to argue that the fact of the collective bargaining agreement [which provided that 'Nothing in this Agreement shall extend the right of in-

vestigation and hearing to a pilot during his first twelve (12) months of service'] unlawful. We are unable to follow the argument. If in fact Delta acted with that motivation, the discharge was unlawful with or without an opportunity for a hearing, and the fact that the probationary pilot was unlawfully discharged would have no bearing on the validity of the portion of the agreement which excludes probationary pilots from the guaranty of a hearing.

494 F.2d at 916.

■ Further, in *Conrad*, there was no dispute that plaintiff's claims that he was discharged in violation of the statute were not committed to the exclusive jurisdiction of the board but rather fell within the jurisdiction of the federal district court. *Id.* at 918. This Court can discern no appreciable difference between the contract clauses and fact situations present in *Conrad* and in the instant case. Accordingly, since there is no conflict between the provisions of the Railway Labor Act and the provision in the collective bargaining agreement unconditionally denying probationers the right to investigation and hearing, the System Board had no jurisdiction to enter the award as it relates to Cedillo and Perry and, therefore, summary judgment in favor of plaintiff TIA will be granted as to this issue.

### The Award in Favor of Other Probationary Flight Attendants

■ The award of the Board with regard to probationary flight attendants who were terminated to effect a reduction in force and subsequently recalled without the requisite ten days' notice presents a markedly different situation. ALPA requested TIA to afford the union an investigation and hearing on two issues: by letter of June 5, 1975, on the termination of probationary employees in connection with the reduction in force; and by letter of July 8, 1975, on the recall of these probationers without the ten days' notice required by § 13(E).[10] The

10. In its original opinion and award, the System Board indicated that the issue submitted to

it was whether the Company violated Section 13(E) of the agreement by failing to give proba-

**449**

Court concludes that both issues present questions concerning the interpretation of the contract of which the Board would have jurisdiction pursuant to Section 21(D) of the agreement.

Although Section 9(A) provides that flight attendants are to be considered as probationary employees for six months from the date of employment, the definition of "employee" in Section 2 clearly includes probationary flight attendants, who would therefore be included within any provision of the agreement other than those from which they are specifically excluded.

Section 13 refers to the furlough of flight attendants during a reduction in force and differentiates between probationers and non–probationers only to the extent that non–probationers are entitled to two weeks' notice of furlough or two weeks' pay in ordinary circumstances. Thus, the question whether probationary flight attendants are subject to dismissal instead of furlough and are entitled to ten days' notice upon recall presents an issue concerning interpretation of the contract of which the Board has jurisdiction under Section 21(D).

Section 22 provides that the Master Executive Council Chairman can file a grievance on behalf of "any individual or group of attendants covered by this Agreement." Probationary flight attendants would, most assuredly, be such a group. Section 20, which relates to investigation and hearing, does not exclude probationary employees from the right to file contractual grievances under Section 22.

Therefore, since the System Board had jurisdiction over the issue relating to probationary employees as a group, under the applicable standard of review, this Court's inquiry is at an end. The Court can go no further by considering the merits of the Board's award in a matter thereby committed to the exclusive jurisdiction of the System Board of Adjustment.[11] *See, e. g., Eastern Airlines, Inc. v. Transport Workers Union, AFL–CIO, Local 553*, 580 F.2d 169, 172 (5th Cir. 1978). Accordingly, summary judgment is hereby granted in favor of defendant and counter–plaintiff AFA on the issue of the System Board's award with regard to probationary flight attendants.

This portion of this case is therefore remanded to the Board for determination of the payment due the affected employees and adjustment of seniority, in accordance with the Board's original opinion and award. TIA is hereby ordered to pay interest at the rate of seven percent (7%) on the back wages determined to be due on remand.

### Attorneys' Fees

■ Defendant and counter–plaintiff AFA has moved the Court to award it attorneys' fees, pursuant to 45 U.S.C. § 153, First (p), based on its contention that TIA's challenge to the Board's award is totally without justification. *See International Ass'n of Machinists and Aerospace Workers, District 776 v. Texas Steel Co.*, 97 LRRM 2496 (N.D.Tex.1978). The Court does not view the company's challenge to either portion of the award as totally without justification, especially in a case in which it ultimately prevailed on one issue. Therefore, the motion of defendant and counter–plaintiff AFA for attorneys' fees will be denied.

tionary employees the ten days' notice of reemployment after furlough. Although the issue may have been somewhat ineptly phrased in the Board's original opinion, the Court nonetheless concludes that the Board was presented with both issues, i. e., whether the probationers could be terminated to effect a reduction in force and whether they were entitled to ten days' notice upon recall.

11. TIA contends that, pursuant to Section 21(G), the Board cannot consider matters which have not yet been handled in accordance with the appeals provisions of the agreement, including the rendering of a decision thereon. Thus, it may have been improper for the Board to render a decision on the merits of this dispute without first deciding that AFA's claims were entitled to hearing and remanding it for such a hearing in accord with the established procedures. However, the Court views examination of the remedy ordered by the Board as an inquiry into the merits of the Board's award, which is foreclosed by the relevant statutory and case law.

Accordingly, summary judgment is hereby granted to plaintiff TIA on the matter of the System Board's award concerning probationers Perry and Cedillo, and that portion of the Board's award is hereby set aside; further, summary judgment is hereby granted in favor of defendant and counter–plaintiff AFA in the matter of the System Board's award concerning probationary employees affected by the reduction in force and subsequent recall, and that portion of the Board's award is hereby ordered enforced.