[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 11, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12109

_____

D.C. Docket No. 00-04705-CV-JLK

JASON WHITAKER and
ALLIED PILOTS ASSOCIATION,

                                        Plaintiffs-Appellants,

versus

AMERICAN AIRLINES, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 11, 2002)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Jason Whitaker, a former employee of American Airlines ("American"), and his union, Allied Pilots Association ("APA"), appeal the district court's dismissal of their claim, pursuant to the Railway Labor Act (the "RLA"), to compel arbitration of Whitaker's termination before a system board of adjustment. This appeal presents the issue of whether a system board of adjustment has the jurisdiction to hear the termination grievance of a probationary employee who asserts no substantive rights under the collective bargaining agreement.

## I.    *Background*

Whitaker was hired as a pilot by American in August 1999, with APA as his certified bargaining representative. American and APA previously had entered into a collective bargaining agreement (the "Agreement") setting out working conditions and grievance procedures for covered employees. Section 21 of the Agreement, entitled "Grievances, Hearing, and Appeals," provides that pilots may not be disciplined or discharged without investigation and written notification. Pilots subject to adverse employment decisions are then allowed to protest the airline's actions by filing a grievance and hearing request. Those dissatisfied with the results after the hearing are then entitled under the Agreement to appeal the decision to American's Vice President-Flight. Pilots who maintain a grievance

2

over their discipline or dismissal even after this internal appeal are then permitted, pursuant to Section 21.D.3, to appeal for arbitration before American's System Board of Adjustment (the "Board of Adjustment" or "Board"). Section 21.E.2, however, expressly limits access to these grievance procedures to tenured employees, stating that "Nothing in this Agreement shall extend rights afforded in this Section 21 to a pilot during his first twelve (12) months of service."[1]

---

[1]Relevant portions of Section 21, "Grievances, Hearings, and Appeals," read as follows:

A.    Grievances
      1.    Discipline and Discharge Grievances
            a. A pilot shall not be disciplined or dismissed from the service of the Company without an investigation and a written notification of such action, including the precise charge or charges against the pilot. ... A pilot may protest the Company's action(s) by filing a grievance and a request for a hearing of the matter in writing within thirty (30) days of the pilot's receipt of the notification.
                                    * * *
C.    Initial Hearing
      1.    The initial hearing shall be held by the pilot's Base Chief Pilot, or his designated representative ... .
                                    * * *
D.    Appeal Hearing
      1.    A decision by the Company which is unsatisfactory to the pilot may be appealed to the Vice President-Flight.
                                    * * *
      3.    A decision by the Company in an appeal hearing may be appealed either to the Grievance Review Board or the System Board of Adjustment by the Association. ...
E.    General
                                    * * *
      2.    Nothing in this Agreement shall extend rights afforded in this Section 21 to a pilot during his first twelve (12) months of service.

3

The RLA directs that it is the "duty of every carrier and of its employees... to establish a board of adjustment" such as the one referred to in Section 21. Railway Labor Act § 204, 45 U.S.C. § 184 (2001).[2]  In this case, the parties created the required board in Section 23 of the Agreement.  Section 23.A provides, "In compliance with the Railway Labor Act, as amended, the parties establish the American Airlines System Board of Adjustment (the "System Board") for the purpose of adjusting and deciding disputes which may arise under the terms of this Agreement and which are properly submitted to it."  Its jurisdiction is defined in Section 23.D as extending to "disputes between any employee covered under this Agreement or the Association and the Company growing out of grievances, or out of interpretation or application of any of the terms of this Agreement."

In June 2000, while still in his twelve month probationary period, Whitaker

---

[2]

The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to an appropriate adjustment board, as hereinafter provided, with a full statement of the facts and supporting data bearing upon the disputes.

It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this subchapter, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title.

Railway Labor Act § 204, 45 U.S.C. § 184 (2001).

received a termination letter after American received negative reviews from his colleagues about his attitude as a crew member. Whitaker and APA representatives sought the pilot's reinstatement, but American upheld its decision.[3] APA then demanded that American arbitrate Whitaker's grievance before the Board of Adjustment. In reliance on Section 21.E.2 of the Agreement, the airline rejected the demand and claimed that, as a probationary pilot, Whitaker possessed no Board of Adjustment arbitration rights. Whitaker individually also asked that the Board be convened to hear his case, but American failed to respond to this request.

Whitaker and APA jointly filed a complaint in federal district court, claiming that American had violated section 204 of the RLA, 45 U.S.C. § 184, by refusing to convene the Board of Adjustment and seeking a preliminary injunction to force American to do so. American filed a motion to dismiss and for a stay of proceedings on Appellants' motion for preliminary injunction. The district court granted the motion to dismiss for failure to state a claim, finding that the Agreement with regard to probationary pilots was not inconsistent with the RLA, and declined to issue the injunction. Whitaker and APA appeal.

---

[3]Appellants alleged below that American refused to rehire Whitaker due to improper anti-union animus towards the APA representatives involved in this case. The district court denied this claim, however, and the issue has not been appealed.

## II.     *Discussion*

The Railway Labor Act, 45 U.S.C. § 151 et seq., originally enacted in 1926 to govern labor-employment relations in the rail industry, was designed to, among other things, "provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of collective bargaining agreements." 45 U.S.C. § 151a (2001). Disputes of this kind generally are referred to as minor disputes. See e.g. Hawaiian Airlines v. Norris, 512 U.S. 246, 252-53 (1994) (distinguishing between those disputes concerning "rates of pay, rules or working conditions," deemed major, and those that "grow out of grievances, or out of the interpretation or application of agreements covering rates of pay, rules or working conditions," denoted as minor). In 1936, Congress extended the RLA to the then-new airline industry. See 45 U.S.C. §§ 181-188 (2001). It adopted for air carriers all of the statutory provisions already in place for rail carriers, with the notable exception of 45 U.S.C. § 153, governing the settlement of minor disputes. See 45 U.S.C. § 181 (2001); 45 U.S.C. § 153 (2001). Instead, Congress enacted 45 U.S.C. § 184 to outline adjustment procedures for minor disputes in the airline industry. The primary difference between the schemes described in the two sections is that under 45 U.S.C. § 153, the National Railroad Adjustment Board (the "NRAB") exists to settle minor disputes between

6

rail workers and their employers, which alternatively can be submitted to an adjustment board that may be created at the option of the parties, whereas under 45 U.S.C. § 184, air carrier adjustment boards are mandatory and no national board of adjustment for minor disputes has been created.[4]

Appellants argue that 45 U.S.C. § 184 establishes the individual right of an air industry employee to compel arbitration before the adjustment board established by his union and employer. They contend that the Eleventh Circuit has expressly recognized this right in Pyles v. United Air Lines, Inc., 79 F.3d 1046 (11th Cir. 1996), a case addressing the preemption of state law claims under the RLA in which the court explained in a footnote why it "believed" that airline employees have a statutory right to pursue claims before a board of adjustment without union assistance. See id. at 1052, n.9. Relying on Third Circuit case law, Appellants maintain that this individual statutory right of Whitaker's would continue to exist even if the Agreement purported to waive it because any waiver would be void. See Capraro v. United Parcel Serv. Co., 993 F.2d 328, 336 (3d Cir.

_____

[4]A national board for the airline industry was contemplated by Congress in passing 45 U.S.C. § 184, which directs that boards of adjustment be established by agreement "pending the establishment of a permanent National Board of Adjustment," but its creation was to be postponed until "in the judgment of the National Mediation Board, it shall be necessary." 45 U.S.C. § 185 (2001). The National Mediation Board has yet to find any such necessity, however, and the National Air Transport Board therefore has never been established.

7

1993).  The court in Capraro held that if an air carrier refuses to participate in a board of adjustment proceeding or a board of adjustment refuses to hear an individual employee's claim, that employee is entitled to a judicial order compelling arbitration.  See id. at 337.  Appellants further draw on Congress' "general aim [] to extend to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry," Int'l Ass'n of Machinists v. Cent. Airlines, Inc., 372 U.S. 682, 685 (1963), emphasizing that the Supreme Court has found individual statutory rights for railroad employees which "cannot be nullified merely by agreement between the carrier and the union." Elgin, Joliet, & E. Ry. Co. v. Burley, 325 U.S. 711, 740 n.39 (1945).  See id. at 734-36 (holding that 45 U.S.C. § 153 vests in each individual rail employee the right to share in negotiations over his grievance; to have notice of his NRAB hearing; to be heard before the NRAB; and to bring an enforcement suit).

American, on the other hand, argues that employers and unions, although mandated to establish a board of adjustment under 45 U.S.C. § 184, are authorized to define the jurisdiction of that board up to the maximum of what is permitted under 45 U.S.C. § 153, i.e., all minor disputes.[5]  According to the airline, the

_____

[5]Carriers and employees must "establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title."  45 U.S.C. § 184.

language of the statute permits parties to negotiate the jurisdiction to be less than this legal maximum, and, as a consequence, any rights that an employee might have to board of adjustment proceedings are not statutory, but rather derivative of and defined by the collective bargaining agreement. In the instant case, American continues, the Agreement created a system board of adjustment the jurisdiction of which excludes grievances over the discharge of a probationary pilot, and consequently Whitaker is not entitled to the injunction he seeks. Appellants counter that the RLA only prohibits parties from *expanding* board jurisdiction beyond that allowed for rail carrier boards of adjustment, reserving for the National Mediation Board any major disputes that might arise.

Initially, we note that the discussion in Pyles relied upon by Appellants is dicta. The court there never considered the situation of an individual airline employee who attempts to convene a board of adjustment but is denied access. Moreover, the Pyles court expressly left open the possibility that had the plaintiff actually been refused a hearing before his airline's board of adjustment, he might have qualified for a futility exception to preemption. See Pyles, 79 F.3d at 1052-53 (holding that the plaintiff was required to "make an attempt to have his case heard [by a board of adjustment] before resorting to federal court," and noting that although the plaintiff suggested that his employer "would attempt to block on

jurisdictional grounds any action before a system board," his statement was "conclusory and speculative"). We comment as well that Burley, cited by Appellants, addressed the statutory rights of railroad workers covered by a different section of the RLA than the one at issue in the instant case. We decline to decide, however, whether probationary employees covered by section 204 of the RLA may lawfully be denied access to a board of adjustment under the terms of a collective bargaining agreement or whether the Agreement here purports to deny such access, as we find these issues unnecessary to the disposition of this case. Instead, we rest our decision upon the fact that Whitaker's claim over his termination does not constitute a minor dispute within the contemplation of 45 U.S.C. § 184, and therefore is not eligible for adjustment by the Board.

In a case involving the distinction between major and minor disputes, the Supreme Court has held that the RLA's statutory scheme requires courts to make the ultimate determination whether a dispute has been properly characterized by the claimant. See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 306 (1989). Although in the case at hand we are not required to distinguish between major and minor disputes, we nonetheless find persuasive the Court's reasoning that federal courts have the prerogative to characterize labor disputes claimed under the RLA. We must first determine if the dispute at issue is a minor

one under the statute before concluding that 45 U.S.C. § 184 adjustment procedures apply.

As discussed above, minor disputes are those that "relate[] either to the meaning or proper application of a particular provision [of a collective bargaining agreement]." Burley, 325 U.S. at 723; see also Consol. Rail, 491 U.S. at 305. Title 45 U.S.C. § 184 refers to disputes "growing out of grievances, *or* out of the interpretation or application of agreements" (emphasis added), and an argument might therefore be made that minor disputes involve a broader set of labor grievances than simply those arising under specific provisions of a collective bargaining agreement. This line of reasoning, however, has been foreclosed by Supreme Court case law. See Hawaiian Airlines v. Norris, 512 U.S. 246, 254 (1994) (holding that "'grievances,' like disputes over 'the interpretation or application' of [collective bargaining agreements], refers to disagreements over how to give effect to the bargained-for agreement"). Accordingly, despite the use of the disjunctive in the statute, "the most natural reading of the term 'grievances' in this context is as a synonym for disputes involving the application or interpretation of a [collective bargaining agreement]." Id. at 255.

The fundamental question, then, is whether Whitaker's dispute "involv[es] the application or interpretation of" the Agreement. To the extent the dispute

centers around the jurisdiction of the Board of Adjustment to hear the grievance, interpretation of Sections 21 and 23 of the Agreement is arguably involved.  This is insufficient, however, to grant to the Board "jurisdiction to decide its own jurisdiction."  Air Line Pilots Ass'n, Int'l v. Delta Air Lines, Inc., 863 F.2d 87, 91 (D.C. Cir. 1988).  In Air Line Pilots, a union appealed from the district court's grant of summary judgment to an air carrier in its action seeking to compel arbitration of grievances under the RLA.  See id. at 88.   The union insisted that federal courts should allow boards of adjustment to determine their own jurisdiction initially, and that courts should only pass on the correctness of these determinations *after* a board makes a judgment for which its authority to do so is challenged.  See id. at 91.  We find the D.C. Circuit's reasoning in rejecting this argument persuasive:

> [T]he purpose of the Board is to decide disputes arising under the agreement.  We have implied previously that arbitration is a matter of contract in an RLA case– at least where a collective bargaining agreement is in effect– because an issue need not be subject to arbitration if there is 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'  Northwest Airlines v. ALPA, 808 F.2d 76, 82 (D.C. Cir. 1987).

Id. at 91.

Whether or not APA and American were permitted under the RLA to give the Board narrower jurisdiction than all minor disputes between the airline and

12

covered employees, it is clear that any dispute submitted to the Board must, at the very least, qualify as a minor dispute, i.e., be "susceptible of an interpretation that covers the asserted dispute." Id.; see also Tex. Int'l Airlines, Inc. v. Ass'n of Flight Attendants, 498 F. Supp. 437, 446-47 (S.D. Tex. 1980), aff'd, 667 F.2d 1169 (5th Cir. 1982) (finding that a federal court may determine the jurisdiction of a board of adjustment, and that where the collective bargaining agreement at issue "is clear and unambiguous," it is "unnecessary for the Board to interpret the contract"). We understand Whitaker to point to no provision of the Agreement that he alleges American to have violated in discharging him– either in its grounds for or the manner in which it carried out this employment decision– and therefore hold that Appellants have not submitted for adjustment a dispute within the jurisdiction of the Board.[6] Where no minor dispute exists, we will not compel arbitration before a board of adjustment.

Appellants stress that the RLA "reflects a strong congressional interest in seeing that employees are not left remediless." Pyles v. United Airlines, 79 F.3d 1046, 1052 (11th Cir. 1996). Where, as here, however, the aggrieved employee

---

[6]Nowhere in their brief or at oral argument did Appellants point to a substantive provision of the Agreement that was violated, nor did they deny Whitaker's status as an at-will employee. "In the absence of a statute or an agreement, an employer may discharge his employee for cause or without cause, and the [RLA] does not limit the employer's right to discharge to instances involving cause." Conrad v. Delta Air Lines, Inc., 494 F.2d 914, 916 (7th Cir. 1974).

points to no provision of a collective bargaining agreement that has been violated (other than the one he insists entitles him to a hearing where he has no substantive right to claim), and additionally alleges no state law violation, the refusal to provide that employee with a forum does not undermine this "strong congressional interest."[7] In deciding this, we draw upon our preemption decisions holding that "only where interpretation of a [collective bargaining agreement] is required will [a state law] claim be preempted." Id. at 1050; accord Pilkington v. United Airlines, 112 F.3d 1532, 1538 (11th Cir. 1997). Similarly, only where interpretation of a collective bargaining agreement is required will a federal court compel arbitration by a board of adjustment. We find further support in Delta Airlines, Inc. v. Airline Pilots Ass'n, Int'l, 238 F.3d 1300, 1307 (11th Cir. 2001), a case in which we held that an airline was entitled to seek an injunction in federal court to prevent its pilots' union from encouraging employees to refuse to work overtime. There we rejected the union's "contention that the CBA 'arguably' allow[ed]" its conduct, and determined that the issue did not require arbitration before a board of adjustment because it did not qualify as a minor dispute. See id.[8]

---

[7]We do not consider whether Whitaker would be entitled to an order compelling arbitration before the Board had he specifically pointed to a substantive provision in the Agreement which he alleged American to have violated.

[8]We recognize that our holding may be inconsistent with Capraro v. United Parcel Serv. Co., 993 F.2d 328 (3d Cir. 1993), cited by Appellants and discussed above. We therefore note

14

Although the district court in its order relied on a 1980 Southern District of Texas opinion for the proposition that airlines and bargaining representatives may enter into valid agreements limiting the grievance and arbitration procedures available to probationary pilots, see Tex. Int'l Airlines, Inc. v. Ass'n of Flight Attendants, 498 F. Supp. 437 (S.D. Tex. 1980), aff'd 667 F.2d 1169 (5th Cir. 1982), we may affirm a decision by the district court "on any adequate ground, even if it is other than the one on which the district court actually relied." Parks v. City of Warner Robbins, 43 F.3d 609, 613 (11th Cir. 1995). Because the reasons for and manner of a probationary employee's discharge are not within the terms of the agreement between APA and American, there is no dispute here requiring interpretation of the Agreement. Appellants' grievance is accordingly not a minor dispute and not within the jurisdiction of the Board.

AFFIRMED.

---

that to the extent that opinion contradicts our decision here, we reject its reasoning.

15