## The PROCTER & GAMBLE INDEPENDENT UNION OF PORT IVORY, N. Y., Plaintiff-Appellee,

v.

## The PROCTER & GAMBLE MANUFACTURING COMPANY, Defendant-Appellant.

### No. 170, Docket 27162.

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1962.

Decided Jan. 31, 1962.

Jack G. Evans, Cincinnati, Ohio (Harold S. Freeman, Dinsmore, Shohl, Barrett, Coates & Deupree, Cincinnati, Ohio, Eugene H. Nickerson and Hale, Stimson, Russell & Nickerson, New York City, on the brief), for defendant-appellant.

Martin J. Loftus, Newark, N. J. (Sabino J. Berardino, New York City on the brief), for plaintiff-appellee.

Before MEDINA, MOORE and SMITH, Circuit Judges.

MEDINA, Circuit Judge.

The Procter & Gamble Manufacturing Company appeals from an order in an

action in the United States District Court for the Eastern District of New York, based upon the jurisdictional and substantive principles stated in Textile Workers v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, granting the motion of the Procter & Gamble Independent Union of Port Ivory, N. Y., for summary judgment directing arbitration, over the Company's objection, of six grievances, claimed by the Union to constitute violations of the collective bargaining agreement between the Union and the Company. These six grievances are fairly summarized by Judge Bartels in his opinion, reported at 195 F.Supp. 134, as follows:

"1. Male production employee doing painter's work;

2. Eliminating Press Operator's job and adding his work on to Mix Man's job classification;

3. Contracting out work normally performed by the Union's bargaining unit;

4. Taking part of the duties of the Duct Cleaner, Machine Cleaner and Machine Steamer and assigning them to a new job classification entitled 'Night Equipment Cleanup';

5. Pipefitter on 'B' shift performing duties normally performed by a Blacksmith; and

6. Not using a Relief Adjuster to cover the absence of an Adjuster."

In the collective bargaining agreement the parties contracted that pending final disposition of any grievance there should be "no lockout, strike, or stoppage of work." The arbitration clause in the standard form prescribed that "a grievance having to do with the interpretation or application of any provision of this agreement" should be submitted to a Board of Arbitration, unless the grievance had been "settled" by following the first three steps in the scheme of processing grievances described in the agreement. The first three steps were duly concluded with reference to each of the six grievances in controversy between the parties, the Union duly demanded arbitration and the Company refused.

■ A number of technical and unsubstantial objections were properly brushed aside in the Court below. Some of the grievances were alleged to be violations of "agreements" between the parties, although the Union stated that it meant only the collective bargaining agreement before the Court that is in terms effective until June 23, 1962. There were said to be numerous genuine issues of fact that could only be disposed of at trial. These all boiled down to contentions by the Company relative to the merits of the disputes framed by the grievances and the Company's version of the facts involved in each of the grievances. But the Court is not concerned with the merits of any of the grievances, as it was solely the function of the Board of Arbitration to pass upon the merits of the claims of the parties pro and con.

As these grievances are the run-of-the-mill, garden variety of grievances commonly presented for solution by the procedures of arbitration in the modern American industrial world, we think the contentions of the Company come down to no more than this: the arbitration clause binds the Company only to the arbitration of grievances "having to do with the interpretation or application of any provision of" the agreement; that none of the alleged grievances were specifically covered by any particular provision of the agreement; and that, therefore, arbitration should be refused. This very contention, however, was rejected by the Supreme Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

■ The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambigu-

ous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement. This is what is meant by the statement in the opinion in the Warrior & Gulf Navigation Co. case at pp. 582–583 of 363 U.S., at page 1353 of 80 S.Ct.:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

There are various reasons for this. As stated in the Warrior & Gulf Navigation Co. case, at p. 584, at page 1354 of 80 S.Ct.: "Every grievance in a sense involves a claim that management has violated some provision of the agreement." And it cannot too strongly be emphasized that the interpretation or construction of the agreement by the Board of Arbitration is the very thing the parties bargained for. See 363 U.S. at p. 599, 80 S.Ct. 1358. Again quoting from the Warrior & Gulf Navigation Co. case, pp. 584–585 of 363 U.S. at page 1354 of 80 S.Ct.:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

Moreover, in the same opinion, pp. 581–582, at page 1352 of 80 S.Ct.:

"The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it. The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed."

By adopting the formula above summarized the Supreme Court cut through time consuming court proceedings and red tape, and set up as matter of federal law a simple procedure, peculiarly suitable for the prompt disposition of miscellaneous labor disputes arising under collective bargaining agreements.

Judge Smith agrees with what we have already written in the foregoing portion of this opinion, but he dissents solely on the ground that he believes the damage question is still open, and that, therefore, the order appealed from is not a final order. For this reason he thinks

we cannot reach the merits, but should dismiss the appeal as interlocutory.

Affirmed and stay vacated.

SMITH, Circuit Judge.

I dissent as stated in the majority opinion.