**Barry L. CONRAD, Plaintiff-Appellant,**

v.

**DELTA AIR LINES, INC. and Air Line Pilots Association, International, Defendants-Appellees.**

No. 72-1643.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1973.

Decided April 12, 1974.

David P. List, Henry L. Mason, III, Chicago, Ill., for plaintiff-appellant.

Irving M. Friedman, James P. Dorr, Chicago, Ill., Robert S. Harkey, Atlanta, Ga., Robert S. Savelson, New York City, for defendants-appellees.

Before FAIRCHILD and SPRECHER, Circuit Judges, and REYNOLDS, District Judge.*

FAIRCHILD, Circuit Judge.

Plaintiff Conrad, a former Delta Air Lines pilot, has appealed from a summary judgment in favor of defendants Delta and the pilots' bargaining representative, the Air Line Pilots Association (ALPA). Delta had requested Conrad's resignation. He claims this was an unlawful discharge and that ALPA breached its duty of fair representation. The complaint sought declaratory relief, back pay, and reinstatement.

Plaintiff's original complaint, filed February 23, 1971, stated that Delta hired plaintiff as a pilot on August 15, 1969; he thereby became a member of the bargaining unit represented by ALPA, and an apprentice member of ALPA. There was a collective bargaining agreement between Delta and ALPA. Sections 32 and 33 prohibit dismissal without a specified procedure of investigation and hearing, but section 32(c)(2) provided that "Nothing in this Agreement shall extend the right of investigation and hearing to a pilot during his first twelve (12) months of service." Section 28 provided that "Each pilot except a captain shall be on probation for a period not to exceed the first twelve (12) months of his aggregate service as a line pilot of the Company."

On July 17, 1970, while plaintiff was still on probation, Delta requested his resignation under threat of discharge and plaintiff resigned. We shall treat the termination as a discharge, as plaintiff claims. On September 29, 1970, plaintiff requested that ALPA represent him in a grievance proceeding under the collective bargaining agreement, and ALPA refused. On November 12, 1970, plaintiff asked Delta for a hearing under the agreement, but Delta refused. Both Delta and ALPA relied on section 32(c)(2) to justify denying plaintiff an investigation and hearing before discharge. Plaintiff also averred that he has no recourse before a board of adjustment because such board was established by an agreement dated February 5, 1970 and the agreement limited the board to disputes submitted by Delta or ALPA. In fact the paragraph defining jurisdiction of the board clearly is broad enough to include plaintiff's dispute. Plaintiff, in arguing that he would be barred from bringing his claim individually, relies on another allegedly limiting paragraph which says the board "shall consider" a dispute submitted by officers of ALPA or Delta. Thus there is an area of ambiguity.

The complaint asserted that sections 32 and 33 of the collective bargaining agreement and the limiting paragraph in the February 5, 1970 agreement "are contrary to 45 U.S.C. §§ 182, 184, and 152."

In the course of discovery, plaintiff obtained copies of documents in Delta's

---

* District Judge John W. Reynolds of the Eastern District of Wisconsin is sitting by designation.

file concerning plaintiff. Thereafter plaintiff obtained leave to amend and on January 3, 1972 added a paragraph to his complaint stating that the discharge was in violation of 45 U.S.C. § 152 because Delta was motivated in discharging him by his activity as a member of ALPA.

Thus plaintiff ultimately made two assaults on the validity of his discharge. In his original complaint, he claimed that the discharge was unlawful because he had not been accorded the right to investigation and hearing. In the amendment to his complaint he claimed that the discharge was unlawful under 45 U.S.C. § 152, Fourth, because it achieved a denial of or interference with his right to join a union of his choice. He also claimed that ALPA's failure to assist him, at least with his initial claim, was a breach of its duty of fair representation.

It will be convenient to consider the two grounds of assault separately.

1. *Discharge of a probationary pilot without prior investigation and hearing.*

Plaintiff's theory on this point is elusive. The collective bargaining agreement clearly provides that the right, spelled out in the agreement, not to be dismissed without investigation and hearing, is not enjoyed by probationary pilots. Plaintiff suggests no basis for an interpretation of the agreement which would entitle a probationary pilot to that right. He seems almost to concede that the difference in treatment, in this regard, between pilots with less than one year's service and those with one year or more does not cause the agreement to be in violation of the Railway Labor Act.

■ In the absence of a statute or an agreement, an employer may discharge his employee for cause or without cause, and the Act does not limit the employer's right to discharge to instances involving cause. Russ v. Southern Ry. Co., 334 F.2d 224, 228 (6th Cir., 1964), cert. denied, 379 U.S. 991, 85 S.Ct. 699, 13 L.Ed.2d 611. In our case the employer has agreed to limit its freedom to discharge a pilot who has served one year or more, but plaintiff is not in that class.

■ The conditioning of an employee's right not to be discharged without a hearing on his having a certain period of service is not arbitrary nor irrational. The rationality of an employer's having greater freedom to discharge during a probationary or testing period seems obvious. It is not the type of hostile discrimination against a group of employees which would lie beyond the proper scope of a collective bargaining agreement. Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 200, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

Plaintiff's original complaint, and the grievance on which he asked ALPA to represent him, embraced only the claim that Delta could not discharge him without the investigation and hearing described in the collective bargaining agreement. Now that, after discovery of Delta's files, he is asserting that he was discharged for activity as a union member, he attempts to argue that the fact of such motivation makes section 32(c)(2) of the collective bargaining agreement unlawful. We are unable to follow the argument. If in fact Delta acted with that motivation, the discharge was unlawful with or without an opportunity for a hearing, and the fact that one probationary pilot was unlawfully discharged would have no bearing on the validity of the portion of the agreement which excludes probationary pilots from the guaranty of a hearing.

To the extent the effect of the collective bargaining agreement is properly before us, we conclude as a matter of law that there is no merit to plaintiff's claim that his discharge was improper because he was denied investigation and hearing.

Although the complaint alleged that ALPA refused to represent plaintiff, it acknowledged ALPA's reliance on sec-

tion 32(c)(2) of the collective bargaining agreement and neither averred nor even suggested that ALPA acted in bad faith in such reliance. See Williams v. General Foods Corp., 492 F.2d 399 (7th Cir., 1974). At the time of plaintiff's request for representation, plaintiff did not know and there is nothing to suggest that ALPA knew of any of the facts on which the claim of an anti-union discriminatory discharge is now based.

To the extent plaintiff relied on the collective bargaining agreement in claiming that his discharge was unlawful, he must litigate the dispute before the appropriate adjustment board, Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 325, 92 S.Ct. 1562, 32 L. Ed.2d 95 (1972), at least unless he has demonstrated circumstances under which submission to the board would be wholly futile. Glover v. St. Louis-S. F. R. Co., 393 U.S. 324, 330, 89 S.Ct. 548, 21 L. Ed.2d 519 (1969). We agree with the district court that plaintiff was not entitled to rely on his own construction of the terms of the agreement creating the board, which he says would bar his submission of a dispute as an individual, without proof that the board applies the same construction. To the extent that he was required to take his claim against Delta before the board, its merits are not before us, but we are called upon to consider its merits to the extent that they bear upon the question of the good faith of ALPA in refusing to represent him. At least as to the grievance as plaintiff originally conceived of it, his claim against ALPA has no merit.

2. *Claim that plaintiff was discharged on account of his union activity.*

During discovery a number of reports and memoranda concerning plaintiff, including some which led up to his discharge, were made known to plaintiff. They included a number of favorable comments by captains on his performance on flights; accompanied by a satisfactory rating; a few adverse comments, accompanied by an unsatisfactory rating; adverse comment on his "freely" representing himself as a "Leftist Activist;" and mention of his complaints of ill health. A report to a vice president of Delta, dated July 17, 1970, by a flight operations manager, referred to review of written and verbal reports, and summarized as follows:

"More than a few crew members claimed that he professed to being a leftist-activist. His political views regarding his country, and flag were diverse to those generally accepted by loyal citizens, and this dialog generally took place en route when attention to flight duties is required. He left his duty station while a S/O as many as three times in a 2½ hour flight for other than operational reasons. As a DC–9 F/O, his performance was reported as unsatisfactory by one Captain in a written report, and several others came to me with verbal reports (reluctant to write the report) of ability and technique not consist[e]nt with Delta standards. I talked with Conrad early last winter regarding his attitude and conduct while on duty, and suggested that he up-grade to DC–9 F/O (this so that I might further evaluate him during the probationary period.) Conrad has flown as DC–9 reserve F/O since April with a succession of different Captains and for varying lengths of time. I have contacted all of these people and my considered opinion is that this man is not the type professionally or emotionally that would make a good Delta employee. His over-activity with the local council as an apprentice member of ALPA, coupled with inquir[i]es regarding company files to our secretary lead to the conclusion that potential trouble will be avoided by acceptance of his resignation."

The last sentence allegedly evidences the anti-union motivation of the discharge.

On defendants' motion for summary judgment, plaintiff presented no affidavits and relied on the manager's memo. Delta supported the motion with an affi-

davit by the manager stating that the reference to over-activity "was included merely as an example of Mr. Conrad's tendency to be unusually outspoken and was not included because of any objection to his membership or participation in ALPA;" and that the purpose in seeking plaintiff's resignation was not to discourage the right to join a labor organization. Delta also submitted the affidavit of the president of Delta who stated that in reviewing plaintiff's discharge, he neither understood nor intended it to be for the purpose of discouraging labor organizing. The district court held that "plaintiff's evidence as to the issue of his discharge for union activity is so insubstantial that it would not justify submission of the case to a jury," and accordingly granted summary judgment for Delta.

■ Summary judgment is appropriate only where "there is no genuine issue as to any material fact." F.R.Civ. P., Rule 56(c). Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants. See Moore's Federal Practice ¶ 56.17 [41–1].

■ Delta's affidavits fell short of demonstrating, in the face of the reference to union activity in the manager's memo, that there is no genuine issue as to a material fact. A claim of discharge in violation of § 152 raises the question of the employer's motivation. Anti-union motivation invalidates even a discharge which could be justified on independent grounds. See, e. g., N. L. R. B. v. Fairview Hospital, 443 F.2d 1217, 1219 (7th Cir., 1971). Motive or intent are not subject to direct proof, but must be inferred from other facts. Cf. Elgin, Joliet & Eastern R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). If improper motive could reasonably be inferred from facts before the court, sworn denials of such inten-

tions do not remove the issue from the case so as to entitle the party to judgment. See Cross v. United States, 336 F.2d 431, 433 (2d Cir., 1964).

■ Delta would explain away the reference to union activity in the manager's report as an unfortunate choice of an example "to illustrate plaintiff's personality traits which he did not feel to be consistent with those of a good employee and a good pilot." We consider the proper interpretation of the report in this regard and the weight to be given it to be a matter for the trier of the fact. As to the claim of anti-union motivation, summary judgment was erroneous.

The parties appear to agree that this claim which rests upon a charge that Delta violated the statute, 45 U.S.C. § 152, is not committed to the exclusive jurisdiction of the adjustment board, but is within the jurisdiction of the district court.[1] See Brotherhood of Railway Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); Brotherhood of Railway Trainmen v. Smith, 251 F.2d 282 (6th Cir., 1958). We do not understand that Andrews v. Louisville & Nashville R. Co., *supra*, 406 U.S. p. 324, 92 S.Ct. 1565, holds otherwise. It is clear that the dispute in *Andrews* stemmed "from differing interpretations of the collective-bargaining agreement," whereas the claim here involved is that the Act was violated.

With respect to plaintiff's claim that ALPA violated its duty to give him fair representation, the complaint does not allege that he requested representation on his claim that the discharge was unlawful because motivated by his union activity. Of course ALPA became aware of that claim when plaintiff amended his complaint. There is no suggestion that the facts on which it was based were known to ALPA at any earlier time.

As has already been mentioned, there is no allegation in the complaint that

1. Two grounds of jurisdiction stated in the complaint were federal question, 28 U.S.C. § 1331, and commerce regulation, 28 U.S.C. § 1337.

ALPA acted in bad faith in refusing representation, and the amendment added no such allegation. In the absence of a claim by plaintiff that he requested representation at that stage, it would seem extraordinary to impose on ALPA, a defendant in plaintiff's action, the duty of offering him representation on a new claim first discovered during the pendency of the action. Accordingly, while we are unable to agree with the district court that Delta was entitled to summary judgment, we conclude that the judgment in favor of ALPA should be affirmed, without prejudice, of course, to plaintiff's right to make a new demand on ALPA and thus impose on ALPA the duty of making a decision in good faith whether to represent plaintiff with respect to his present claim against Delta.

Insofar as the judgment appealed from is in favor of ALPA, it is affirmed. Insofar as it is in favor of Delta, it is reversed and the cause is remanded for further proceedings consistent with this opinion. Plaintiff may recover his costs on appeal from Delta, and ALPA from plaintiff.

Friendly, Circuit Judge, filed dissenting opinion.