**AIR LINE PILOTS ASSOCIATION**

v.

**PRECISION VALLEY AVIATION, INC.**

Civ. No. 93–99–JD.

United States District Court,
D. New Hampshire.

Aug. 16, 1993.

Patti Blanchette, Jerry D. Anker, for plaintiff.

Peter S. Cowan, E. Scott Smith, for defendant.

## ORDER

DiCLERICO, Chief Judge.

Plaintiff Air Line Pilots Association ("ALPA")[1] brings this action to compel defendant Precision Valley Aviation, Inc. ("PVA") to arbitrate, pursuant to section 204 of the Railway Labor Act, 45 U.S.C.A. § 184 (West 1986), a dispute arising under its collective bargaining agreement (the "Agreement") with pilots employed by PVA. ALPA also seeks to enjoin PVA from discharging or threatening to discharge, in violation of section 2 Fourth of the Railway Labor Act, 45 U.S.C.A. § 152 Fourth (West 1986), the pilots on whose behalf ALPA filed a grievance pursuant to the terms of the Agreement. ALPA has moved for summary judgment on both counts. For the following reasons the court grants ALPA's motion for summary judgment with respect to count I and dismisses count II for lack of subject matter jurisdiction.

1. ALPA is the collective bargaining representative of Precision Valley Aviation, Inc. pilots.

## Background

In November 1992, PVA announced its intention to furlough fourteen pilots. ALPA requested that the pilots be afforded bidding rights for vacant positions at Northeast Express Regional Airlines ("Northeast") pursuant to section 1.E.1.b. of the Agreement.[2] PVA informed ALPA that such bidding rights would not be provided. On December 17, 1992, ALPA filed an internal grievance pursuant to section seventeen of the Agreement requesting PVA to give furloughed pilots bidding rights at Northeast.[3] PVA refused to grant such bidding rights.

On January 11, 1993, PVA furloughed twelve pilots (two less than previously announced), all of whom had been employed by PVA for less than one year and were considered "probationary" under section eleven of the Agreement.[4] The twelve pilots were not afforded bidding rights at Northeast. On January 20, 1993, ALPA requested that its grievance be submitted to arbitration before the System Board of Adjustment pursuant to section eighteen of the Agreement.[5] On February 18, 1993, PVA informed ALPA that it would not arbitrate the grievance because probationary pilots did not have access to the grievance and arbitration procedure pursuant to section eleven of the Agreement. Moreover, PVA announced that if the grievance was not withdrawn within seven days, PVA would discharge the twelve furloughed pilots.

On February 25, 1993, ALPA filed this lawsuit and a motion for a temporary restraining order and preliminary injunction.

On March 9, 1993, Magistrate Barry recommended denial of the motion. By April 4, 1993, however, all of the furloughed pilots (except one who had voluntarily resigned) had been recalled to flight status and ALPA withdrew its motion.

## Discussion

In order to sustain a motion for summary judgment, the moving party must show there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (citing Fed.R.Civ.P. Rule 56(c)), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The court views the entire record in the light most favorable to the non-moving party, indulging all reasonable inferences in that party's favor. *Id.* (citing *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)). Once the moving party has made a properly supported motion for summary judgment, however, the adverse party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. Rule 56(e)).

## Count I:

ALPA requests the court to compel arbitration of its grievance arising under section 1.E.1.b. of the Agreement. PVA contends probationary pilots do not have access to the

---

**2.** Section 1.E.1.b. states: "Any pilot furloughed from Precision may bid a vacancy at Northeast in accordance with his seniority on the Consolidated Seniority list, without loss of longevity."

**3.** Relevant provisions of section seventeen include:

17.A: "A grievance is defined as a dispute between the parties arising under the terms of this Agreement. Any pilot or group of pilots may file a written grievance on a matter affecting them," and

17.B.2: "The pilot has the right to be represented at every step of this procedure by an Association representative."

**4.** Section eleven states: "A pilot will be on probation for a period not to exceed the first twelve (12) months of active service as a line pilot with the Company. During the probationary period a

pilot will have no individual right of access to the grievance procedure or System Board of Adjustment except to protest any omission or incorrect posting affecting his seniority."

**5.** Relevant provisions of section eighteen include:

18.A: "In compliance with Section 204, Title II of the Railway Labor act, as amended, there is established a System Board of Adjustment for the purpose of adjusting and deciding dispute[s] which may arise under the terms of this Agreement to be known as the Precision Airlines Pilots' System Board of Adjustment," and

18.D: "The Board will consider any dispute properly submitted to it by the President of the Association or by the President of the Company, when such dispute has not been previously settled in accordance with the provisions of Section 17, Grievances."

grievance procedure or System Board of Adjustment except to protest any omission or incorrect posting affecting their seniority.

■ Disputes between a union and a carrier under the Railway Labor Act are classified as either "major" or "minor". Major disputes seek to create contractual rights while minor disputes seek to enforce those rights. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (citing *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945)). Minor disputes require the interpretation or application of an existing collective bargaining agreement and are subject to compulsory and binding arbitration before the System Board of Adjustment.[6] *Id.,* 491 U.S. at 303, 109 S.Ct. at 2480; *Railway Labor Executives' Ass'n v. Boston & Me. Corp.,* 808 F.2d 150, 157 (1st Cir.1986), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). In the present case, both parties agree the dispute in question is a "minor" dispute but do not agree it is subject to compulsory arbitration.

■ A minor dispute is generally subject to the exclusive jurisdiction of the System Board of Adjustment. *See Consolidated Rail Corp.,* 491 U.S. at 303–04, 109 S.Ct. at 2480–81. However, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT & T Technologies, Inc. v. Communication Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). " '[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 650, 106 S.Ct. at 1419 (quoting *United*

*Steelworkers of Am. v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)). The court, in deciding whether the parties have agreed to submit a particular grievance to arbitration, however, may not rule on the merits of the underlying claims. *Id.,* 475 U.S. at 649, 106 S.Ct. at 1418–19.

The Agreement between ALPA and PVA includes section 1.E.1.b., the provision allowing furloughed pilots to bid for vacancies at Northeast. Section seventeen of the Agreement authorizes any pilot or group of pilots to file a grievance or submit to arbitration a dispute arising under the terms of the Agreement. Therefore, disputes arising under section 1.E.1.b. must be arbitrated by the System Board of Adjustment. PVA, however, contends the dispute is not arbitrable because probationary pilots are precluded from the grievance and arbitration process pursuant to section eleven of the Agreement. Section eleven states,

A pilot will be on probation for a period not to exceed the first twelve (12) months of active service as a line pilot with the Company. During the probationary period a pilot will have no individual right of access to the grievance procedure or System Board of Adjustment except to protest any omission or incorrect posting affecting his seniority.

■ In a recent decision, the Third Circuit held "an employer and a union, through a negotiated collective bargaining agreement, cannot deprive a category of employees of access to the grievance and arbitration process." *Capraro v. United Parcel Serv. Co.,* 993 F.2d 328, 336 (3d Cir.1993). In reaching its decision, the *Capraro* court reasoned that the Railway Labor Act "reflects a strong congressional interest in seeing that employees are not left 'remediless' and without a

6. "Under Section 204 of the Railway Labor Act, 45 U.S.C. § 184, disputes growing out of grievances or the interpretation or application of agreements between employees and an air carrier may be referred to an appropriate adjustment board when such disputes are unresolved in internal grievance procedures." *International Ass'n of Machinists and Aerospace Workers v.*

*Republic Airlines,* 761 F.2d 1386, 1389 (9th Cir. 1985). The law makes the establishment of adjustment boards for the arbitration of minor disputes compulsory. *Id.* (citing *International Ass'n of Machinists v. Central Airlines, Inc.,* 372 U.S. 682, 686, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963)).

forum to present their grievances."[7] *Id.* (quoting *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967)). The *Capraro* court was careful to distinguish, however, between agreements which limit an employee's substantive rights and agreements which eliminate an employee's procedural rights. *Id.* at 336 n. 13. The court found the former to be generally permissible but held agreements eliminating procedural rights to be impermissible because "an employee's right to a hearing before an Adjustment Board is statutorily guaranteed." *Id.; see also Elgin, J. & E. Ry. Co.,* 325 U.S. at 740 n. 39, 65 S.Ct. at 1297 n. 39 ("[T]he individual employee's rights cannot be nullified merely by agreement between the carrier and the union. They are statutory rights, which he may exercise independently or authorize the union to exercise in his behalf."); *Slagley v. Illinois Cent. R.R. Co.,* 397 F.2d 546, 551 (7th Cir.1968) (employee has statutory right to submit grievance to the Adjustment board which cannot be nullified by agreement between the carrier and the union).

While PVA acknowledges the *Capraro* court's holding, it argues the court should instead rely upon *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914 (7th Cir.1974) and *Texas International Airlines, Inc. v. Association of Flight Attendants,* 498 F.Supp. 437 (S.D.Tex. 1980), *aff'd,* 667 F.2d 1169 (5th Cir.1982) (*per curiam*). In *Conrad,* the collective bargaining agreement prohibited dismissal of an employee without a specified procedure of investigation and hearing but precluded probationary employees from exercising this right. 494 F.2d at 915. While the *Conrad* court approved the contractual provision at issue in that case, its decision is not inconsistent with *Capraro. See Conrad,* 494 F.2d at 916. As the *Capraro* court notes, the agreement in *Conrad* did not bar submission of disputes to the Adjustment Board but merely permitted the discharge of probationary employees without a prior investigation or hearing.[8] *Capraro,* 993 F.2d at 336 n. 13; *see also Conrad,* 494 F.2d at 915.

The *Texas International* court validated a collective bargaining agreement which excluded probationary employees from the grievance and arbitration procedure for matters concerning discharge and disciplinary action. *See* 498 F.Supp. at 446–47. The court reasoned that because the provision was clear and unambiguous, it was " 'beyond peradventure of doubt' " that probationary employees were excluded from the investigation and hearing procedure with respect to disputes arising out of discharge or disciplinary action. *Id.* (quoting *Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.,* 298 F.2d 644, 645–46 (2d Cir.1962)).[9]

---

**7.** The Railway Labor Act affords System Boards of Adjustment exclusive jurisdiction over minor disputes. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 303–04, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989). This "reflects a clear decision by Congress that minor disputes should be arbitrated, not litigated." *Capraro v. United Parcel Serv. Co.,* 993 F.2d 328, 336 (3d Cir.1993).

**8.** As noted by the *Capraro* court, the *Conrad* court indicated probationary employees had a right of access to the arbitration procedure and "specifically noted that to the extent Conrad claimed his discharge violated the collective bargaining agreement, he was required to 'litigate the dispute before the appropriate adjustment board.' " *Capraro,* 993 F.2d at 336 n. 13 (quoting *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 917 (7th Cir.1974)). In addition, the *Conrad* court did not focus on whether the provision limited an employee's procedural or substantive rights as the *Capraro* court did.

**9.** The *Texas International* court relied in part on the standard established in *Procter & Gamble* to evaluate whether the parties intended to exclude probationary employees from arbitrating their right to an investigation and hearing. *See Texas Int'l Airlines v. Association of Flight Attendants,* 498 F.Supp. 437, 446–47 (S.D.Tex.1980), *aff'd,* 667 F.2d 1169 (5th Cir.1982) (*per curiam*); *see also Procter & Gamble Indep. Union v. Procter & Gamble Mfg. Co.,* 298 F.2d 644, 645–46 (2d Cir. 1962). *Procter & Gamble* held that every grievance is arbitrable unless the provisions of the collective bargaining agreement "contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement." 298 F.2d at 645–46. *Proctor & Gamble,* however, involved whether the parties agreed specific issues were arbitrable, not whether a specific class of employees were precluded from the grievance and arbitration procedure. *See id.* at 645.

Unlike the present case, *Texas International* involved probationary employees who had been terminated. 498 F.Supp. at 441. In the present case, by contrast, the furloughed pilots were still bound by and retained rights under the Agreement. Furthermore, *Texas International* did not consider whether the provision affected substantive or procedural rights under the collective bargaining agreement. Therefore, the holding in *Texas International* does not benefit the defendant in this case.

■ The court is persuaded by *Capraro* that a collective bargaining agreement may not exclude a category of employees from the grievance and arbitration process. 993 F.2d at 336. The reasoning in *Capraro* is consistent with congressional intent mandating arbitration rather than litigation of minor disputes and ensuring employees have access to a forum in which to present their complaints. Absent such a forum, employees would be unable to enforce bargained-for substantive rights.

While the court finds a collective bargaining agreement may not exclude a class of employees from the grievance and arbitration procedure, it finds nothing in *Capraro* which precludes ALPA and PVA from limiting substantive rights by agreeing to prevent furloughed probationary pilots from applying for vacant positions. In fact, *Capraro* suggests parties to a collective bargaining agreement may limit substantive rights if each employee is afforded access to the grievance and arbitration process. *See* 993 F.2d at 336 n. 13.[10]

■ PVA contends even if it must arbitrate a grievance filed by a probationary pilot (or group of pilots), there is no authority requiring it to arbitrate with ALPA. PVA claims ALPA waived its right to arbitrate

grievances on behalf of probationary pilots by including section eleven in the Agreement. Section eleven states probationary pilots will not have an "*individual right* of access to the grievance procedure or System Board of Adjustment...." (emphasis added). Section eleven does not prohibit *ALPA* from arbitrating grievances with respect to probationary pilots but prevents *individual pilots* from arbitrating grievances. To the extent section eleven precludes probationary pilots from individually engaging in the grievance and arbitration procedure, however, it is invalid.

■ Employees have a statutory right to designate representatives to arbitrate minor disputes. 45 U.S.C.A. § 152 Second; *see also Slagley,* 397 F.2d at 551. Furthermore, section 17.B.2 of the Agreement states "[t]he pilot has the right to be represented at every step of [the grievance] procedure by an Association representative." Finally, there is nothing in the *Capraro* decision either mandating or prohibiting a union from representing a probationary employee. As such, the court finds ALPA, as representative for the probationary pilots and as a signatory to the Agreement, may represent the probationary pilots in this matter and rejects PVA's argument that it is not required to arbitrate with ALPA.

The court, adopting the reasoning established in *Capraro,* finds there is no genuine issue of material fact as to whether the issue arising under section 1.E.1.b of the Agreement is arbitrable and grants summary judgment in favor of ALPA with respect to count I.

*Count II:*

■ ALPA contends PVA violated section 2 Fourth of the Railway Labor Act, 45

10. This reasoning is consistent with the theory that parties to a collective bargaining agreement are not required to arbitrate issues which they do not agree to arbitrate. *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). In *AT & T Technologies,* 475 U.S. at 645 n. 2, 106 S.Ct. at 1415 n. 2 and *United Steelworkers of America,* 363 U.S. at 576, 80 S.Ct. at 1349–50, the parties to the respective bargaining agreements agreed not to submit certain *issues* to arbitration. This is not inconsistent with *Capraro. Capraro* merely prohibits the parties to collective bargaining agreements from excluding a *class of employees* from the grievance and arbitration procedure for all issues. *See Capraro,* 993 F.2d at 336 n. 13. It does not prevent the parties from agreeing to exclude *specific issues* from the procedure. *Id.*

U.S.C.A. § 152. Fourth, by threatening to discharge the furloughed pilots if they did not withdraw their grievance. ALPA requests that the court issue a permanent injunction restraining PVA from discharging or threatening to discharge probationary pilots in retaliation for their or ALPA's union activities. *See* Plaintiff's Motion for Summary Judgment at 15–16. Because PVA never executed its threat to discharge the furloughed employees but instead reinstated them, the court finds ALPA lacks standing to pursue an injunction.

The court *sua sponte* addresses the standing issue. "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The plaintiff must show that it " 'has sustained or is immediately in danger of sustaining some direct injury.' " *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (quoting *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923)). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *Id.* (quoting *Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969)). With respect to injunctive relief, a plaintiff must demonstrate that he or she faces continuing harm, not merely past injury. 7 James W. Moore *et al., Moore's Federal Practice* ¶ 65.17 (2d ed. 1993). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea,* 414 U.S. at 495–96, 94 S.Ct. at 676.

In the present case, ALPA claims PVA violated the Railway Labor Act. ALPA does not, however, provide evidence showing continuing harm justifying injunctive relief. Absent evidence showing there is a real and immediate threat ALPA or the pilots it represents are currently being harmed by PVA's alleged violation of 45 U.S.C.A. § 152 Fourth, the court finds ALPA's threat of injury nothing more than conjectural and hypothetical.

Furthermore, "case or controversy considerations '... shade into those determining whether the complaint states a sound basis for equitable relief....' " *City of Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983) (quoting *O'Shea,* 414 U.S. at 499, 94 S.Ct. at 677). The United States Supreme Court has recognized the basic requisites of equitable relief as " 'the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.' " *Id.* (quoting *O'Shea,* 414 U.S. at 502, 94 S.Ct. at 679). The court finds ALPA has not shown a likelihood of substantial and immediate irreparable injury. Moreover, the court finds that if PVA were to violate 45 U.S.C.A. § 152 Fourth in the future, ALPA and the pilots it represents could sufficiently pursue an adequate remedy at law. The court assumes, in light of the court's finding with respect to count I, that PVA " 'will conduct their activities within the law and so avoid ... exposure to the challenged course of conduct ...' " *City of Los Angeles,* 461 U.S. at 103, 103 S.Ct. at 1665 (quoting *O'Shea,* 414 U.S. at 497, 94 S.Ct. at 677). Therefore, with respect to count II, the court finds ALPA lacks standing to seek injunctive relief. As such, the court lacks subject matter jurisdiction over the matter.

### Summary

For the foregoing reasons, the court grants the Plaintiff's Motion for Summary Judgment with respect to count I and dismisses count II for lack of subject matter jurisdiction (document no. 12).

SO ORDERED.