**NATIONAL SOFFIT & ESCUTCHEONS, INCORPORATED, Plaintiff–Appellant,**

v.

**SUPERIOR SYSTEMS, INCORPORATED, Defendant–Appellee.**

No. 96–1409.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1996.

Decided Oct. 11, 1996.

Lawrence G. Reinhold (argued and briefed), Southfield, MI, for National Soffit & Escutcheons, Inc.

William L. LaBre (argued and briefed), LaBre & Blunier, Edwardburg, MI, for Superior Systems, Inc.

Before CUMMINGS, BAUER, KANNE, Circuit Judges.

BAUER, Circuit Judge.

National Soffit & Escutcheons, Inc. ("National"), an Arizona corporation, filed suit against Superior Systems, Inc. ("Superior"), an Indiana corporation. National sought to enforce an Arizona state court judgment entered against Soffit Systems, Inc. ("Soffit"), an Arizona corporation. National contended that Superior was liable as a corporate successor to Soffit because it was merely a continuation of Soffit, created to defraud Soffit's creditors. National further asserted that because of this alleged fraud, National should be able to collect its judgment against Soffit by piercing Superior's corporate veil. National now appeals an Indiana district court's grant of summary judgment for Superior. We affirm.

## Background

National manufactures and sells a product called "Coverline," a sheet metal aluminum material used to cover exposed water pipes and sprinkler heads. Louise Hoisington ("Hoisington") worked for National from 1980 until March 1989. In 1987, Hoisington and her husband Duane ("the Hoisingtons") formed Coverline Corporation and became franchisees of National under five area contracts. These contracts granted Coverline the exclusive right to sell and market National's product in five geographic areas and prohibited Coverline and its employees from divulging any of National's customer information or trade secrets. In addition, the contracts subjected Coverline to a restrictive

covenant which forbade competition or sales for a one-year period in the five geographic areas. Hoisington's sons, David and A. Craig Alexander, served as Coverline's president and vice-president, respectively. Because they were both Indiana residents, they were not actively involved in Coverline's business until March 1989. Coverline also employed Ron Alexander, Hoisington's nephew.

In March 1989, Hoisington misled National into believing that she was going to retire, prompting National to rescind the franchise contracts. In actuality, Hoisington went into direct competition with National under the name of Soffit Systems, Inc. Using information obtained from National, Soffit underbid National on several key projects in the areas covered by the franchise contract's non-competition clause.

National filed suit against Soffit, the Hoisingtons, David Alexander, A. Craig Alexander, and Ron Alexander in an Arizona state court. The Arizona court determined that the rescission of the franchise contracts was void because it had been induced by fraud and that Soffit, the Hoisingtons, and Ron Alexander had breached the non-competition clause and an implied covenant of good faith and fair dealing. The court then awarded National damages not to exceed $29,535.46, plus fees and costs.

However, before the final judgment was entered, Soffit formally ceased doing business. In February 1992, the Hoisingtons filed for bankruptcy and were granted a discharge in June 1992. Because of the discharge in bankruptcy, National was unable to collect its judgment from Soffit and attempted to enforce it elsewhere. In the meantime, on November 26, 1991, Soffit's former president, David Alexander, and former vice-president, A. Craig Alexander, formed an Indiana corporation, Superior Systems, Inc. Superior engages in the same line of business as Soffit.

Seeking to enforce the Arizona judgment, National then filed suit in a Pennsylvania district court against Superior and Fire Protection Industries, a Pennsylvania corporation indebted to Superior. National initially sought relief under the equitable doctrine of piercing the corporate veil. National subsequently argued that Superior may also be liable for Soffit's debts as a successor corporation. Although the Pennsylvania district court had personal jurisdiction over Fire Protection Industries, it was not clear that it had personal jurisdiction over Superior, an Indiana corporation. By agreement, the court severed the claims, transferred the claims against Superior to the district court in Indiana, retained jurisdiction over the garnishment proceedings against Fire Protections Industries, and stayed that proceeding pending the outcome in Indiana district court.

National had filed a motion for judgment on the pleadings before the Pennsylvania district court. Superior's answer included a counterclaim against National alleging tortious interference with existing and prospective contractual relationships and seeking, among other things, an injunction prohibiting National from initiating further collection proceedings against Superior in any state or federal court. The case was then transferred to the Indiana district court. Superior filed a motion for summary judgment. The Indiana district court determined that there was no conflict among the laws of Indiana, Pennsylvania, and Arizona. The court found that all three states apply the same general principles in considering whether one corporation may be liable for the debts of another under the doctrine of piercing the corporate veil or as a successor corporation. The court denied National's motion, granted Superior's motion for summary judgment, and denied Superior's counterclaim. National now appeals the trial court's grant of summary judgment for Superior.

### Analysis

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. However, if the nonmoving party, pursuant to Rule 56(f), provides in an affidavit why he cannot present facts essential to his opposition to the motion for summary judgment, the court may: (1) refuse the motion; (2) order a continuance to permit affidavits to be obtained, depositions to be taken or discovery to be had; or (3) make such other order as justice requires. *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982).

We review the district court's grant of summary judgment de novo. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). In considering whether there are any genuine issues of material fact, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. *Hartford Accident & Indem. Co. v. Chicago Hous. Auth.*, 12 F.3d 92, 95 (7th Cir.1993). The applicable substantive law will dictate which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.*

■ In this case, the applicable substantive law is the equitable doctrine of piercing the corporate veil and the rules regarding the liability of a successor corporation. We will first address National's wish to pierce Superior's corporate veil. Generally, courts are reluctant to disregard the corporate entity, but will do so to prevent fraud or unfairness to innocent third parties. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind.1994). The doctrine of piercing the corporate veil may be used to hold individual shareholders, officers and related corporations liable for the acts of the corporation. The burden of proof falls on the party seeking to pierce the corporate veil to establish that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994). When a court employs its equitable power to pierce the corporate veil, it engages in a highly fact-sensitive inquiry. *Winkler*, 638 N.E.2d at 1232. To determine whether a plaintiff has met this burden, the trial court considers whether the plaintiff has introduced evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by the corporation's shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets or affairs; (7) failure to observe required formalities; or (8) other shareholder acts or conduct

ignoring, controlling or manipulating the corporate form. *Aronson*, 644 N.E.2d at 867.

■ In the present case, the burden fell on National to introduce evidence showing that Superior was the mere alter ego of Soffit. National could have done so in any of the aforementioned ways. We agree with the district court that National failed to introduce evidence tending to reflect any of the above factors. Nonetheless, we will address, in the light most favorable to National, the evidence which National did introduce. Specifically, National presented no evidence suggesting that Superior was undercapitalized; that it failed to keep corporate records or observe corporate formalities; or that the Alexander brothers, as Superior's sole shareholders and directors, made fraudulent representations. As to the remaining factors, National's support was meager at best. David Alexander was the president and A. Craig Alexander was the vice-president of Soffit, and they also serve Superior in the same capacities. Furthermore, Superior engages in the same line of business as Soffit. But we cannot conclude from these commonalities that Superior was created to promote fraud. David Alexander and A. Craig Alexander are Superior's sole directors and shareholders and were not part of the group of Soffit officers that were found liable to National in the Arizona judgment. The Hoisingtons and Ron Alexander apparently have nothing to do with Superior. Turning to the next factor, Superior's purchase of $700.00 worth of Soffit's tools at fair market value cannot constitute commingling of Soffit's and Superior's assets and affairs. National alleged that Soffit transferred assets consisting of business contracts to Superior, but National offered no evidence in support of its assertion. Finally, National alleged that Superior paid some of Soffit's debts and obligations, but National, again, offered no specific evidence.

National's reply brief to Superior's motion for summary judgment did not differ in any marked degree from its complaint. It consisted of conclusory allegations and bald declarations that such allegations constituted a material issue of fact. National's brief merely posed questions; it offered no relevant evidence. As the party bearing the burden of proof on the issue of piercing the corporate veil, National cannot rest on its pleadings. Yet it appears that National did just that.

■■ National's second claim, that Superior is liable as a successor corporation, also fails. Generally, when one corporation transfers or sells its assets to another, the latter corporation does not assume the debts and liabilities of the former. *Winkler*, 638 N.E.2d 1228. However, courts will impose liability where there exists: (1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is a de facto consolidation or merger; or (4) instances where the purchaser is a mere continuation of the seller. *Id.*

■ On appeal, National continues to contend that the last three exceptions may apply to the instant case. Examining the record in the light most favorable to National, we find that none of them apply. In order for one corporation to be deemed a successor corporation in the first place, it must be a successor to all, or substantially all, of another corporation's assets. *See Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 387 (Ind.Ct.App.1991). In the present case, Superior was not a successor to all, or substantially all, of Soffit's assets. The only sale or transfer of assets supported by any evidence is the sale of $700.00 worth of hand tools by Soffit to Superior for which Superior paid fair market value. National, which had the burden of proof on the issue of successor liability, alleged that Soffit transferred its business contracts to Superior, but National, again, offered no factual support for this allegation. In 1992, Soffit's receivables alone amounted to $89,200.00. Superior's purchase of $700.00 worth of hand tools can hardly amount to a sale of all or substantially all of Soffit's assets. Superior was merely a purchaser of a small portion of Soffit's assets. Thus, because National has not established that Superior was a successor to all or substantially all of Soffit's assets, we need not discuss whether National has satisfied any of the exceptions regarding successor liability.

While National's reply brief amounted to resting on its pleadings, Superior's motion for summary judgment and its response to National's reply brief offered specific sworn contrary evidence. Superior presented the sworn affidavit of David Alexander ("Alexander"). In his affidavit, Alexander stated that Superior had not received any business contracts from Soffit nor any other assets from Soffit, except for some hand tools worth $700.00. He also stated that after Superior was incorporated, Soffit's 1992 receivables amounted to $89,200.00 and that Soffit used this money to pay various business debts. Alexander further stated that at no time had Superior paid any of Soffit's debts or obligations nor had Soffit paid any of Superior's debts or obligations. Alexander also mentioned that Soffit still owes him and his brother $20,000.00 and still owes him unpaid wages.

Superior also attached its articles of incorporation to its motion for summary judgment. The articles established that Superior was incorporated in Indiana and that Alexander and his brother are Superior's sole shareholders, directors, and officers. These articles also confirmed that Superior operates out of different premises than those of Soffit. Finally, Superior's articles of incorporation and Alexander's affidavit verified that Superior conducts its business under a name different from that used by Soffit. Alexander stated that although the initials "SSI" may have been used on Superior's printed materials, they were always accompanied by the full name "Superior Systems."

We now turn to the issue of intent. On appeal, National continues to argue that this matter turns on whether David Alexander and A. Craig Alexander created Superior with the *intent* to defraud Soffit's creditors. National has cited *Conrad v. Delta Air Lines* for the proposition that dismissal of a case by summary judgment is inappropriate where the underlying issue is one of intent, motivation, or some other subjective factor. 494 F.2d 914, 918 (7th Cir.1974) (citation omitted). We stated in *Conrad* that "[i]f improper motive could reasonably be inferred from facts before the court, sworn denials of such intentions do not remove the issue from the

case so as to entitle the party to judgment." *Id.* In *Conrad*, the case largely turned on whether the plaintiff pilot was discharged by Delta because of his union activity. We noted that anti-union motivation invalidates even a discharge which could be justified on independent grounds. *Id.* Thus, motive was undoubtably an underlying issue in *Conrad.*

The present case is clearly distinguishable from *Conrad.* In the case at bar, motive is not such a predominant factor. Furthermore, in *Conrad*, the plaintiff's reply to the defendant's motion for summary judgment differed dramatically from that in the instant case. On Delta's motion for summary judgment, the plaintiff presented no counter affidavits. However, the plaintiff submitted a Delta manager's memo which specifically referred to the plaintiff's union activity and concluded that Delta could avoid trouble by accepting the plaintiff's resignation. *Id.* at 917. We then found that in light of the manager's memo, Delta's affidavits fell short of demonstrating that there was no genuine issue as to a material fact. In the present case, in its reply brief to Superior's motion for summary judgment, National proclaimed perfunctorily:

> [T]he evidence presented by the defendant Superior Systems, Inc. indicates that three out of the four exceptions (instances imposing successor liability) may apply. At best, it is a question of fact whether the creation of Superior Systems, Inc. under the facts presented to the court was fraudulent and for the sole purpose of escaping liability. Also, because Superior Systems, Inc. continued in the sale (sic) business and under the same name, S.S.I., and purchased at least some assets of Soffit Systems, Inc., it is a question of fact whether it was a de facto merger or consolidation. Finally, given the facts presented, and the admissions by the corporate officer of the defendant, it seems quite clear that Superior Systems, Inc. is at least a mere continuation of Soffit.

This conclusory declaration exemplifies the kind of factual support submitted by National in its reply brief. In contrast to the quantum and quality of the plaintiff's evidence in *Conrad*, National's evidence as to why Supe-

rior was created was simply not substantial enough to justify submission of the case to a jury.

### Conclusion

National's reply brief to Superior's motion for summary judgment raised more issues and posed additional questions, but it included no counter affidavits or exhibits which might have raised a genuine issue of material fact as to whether Superior was liable as a mere alter ego of, or a successor corporation to, Soffit. Moreover, National chose not to submit an affidavit in accordance with Rule 56(f). In sum, the record as a whole could not lead a rational trier of fact to find for National. We affirm.